720 F.Supp. 141 (1989)
Richard WIBBENMEYER, Plaintiff,
v.
AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant.
No. 88-1844C(6).
United States District Court, E.D. Missouri, E.D.
September 22, 1989.
Eugene H. Fahrenkrog, Jr., St. Louis, Mo., for plaintiff.
Theodore G. Pashos, Amelung, Wulff & Willwnbrock, St. Louis, Mo., for defendant.

MEMORANDUM OPINION
GUNN, District Judge.
This is a civil action brought by Richard Wibbenmeyer against his insurer, American Family Mutual Insurance Company ("American Family") to recover from his parents' underinsured motorist policies for damages arising out of personal injuries he sustained in an automobile accident. Defendant American Family removed the action to this Court based upon diversity jurisdiction. The parties do not dispute Wibbenmeyer's injuries or the extent of his damages. Only the amount available to Wibbenmeyer under the American Family policy is at issue.
In this non-jury case, the Court has considered the pleadings, the testimony of the witnesses, the documents in evidence and the stipulations of the parties and hereby adopts as its findings of fact the following facts to which the parties have stipulated and further makes the following conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure.

Statement of Stipulated Facts
1. On March 2, 1988 plaintiff Richard Wibbenmeyer was the son of Richard O. and Rose Wibbenmeyer and was a passenger in a 1978 Chevrolet driven by Douglas Edward Ramsey, owned by Dennis and Mary Ramsey and insured by Commercial Union Insurance Company ("Commercial Union") with policy liability limits of $100,000 per person.
2. On March 2, 1988 Richard Wibbenmeyer was injured when the 1978 Chevrolet collided with a bridge pillar in St. Louis County, Missouri. Richard Wibbenmeyer's damages on account of the injuries thus received were in excess of $300,000.00.
3. At the time of the automobile accident referred to above, Richard Wibbenmeyer resided in his parents' household at 143 Mareda in Arnold, Missouri.
4. At that same time, Richard O. and Rose Wibbenmeyer owned a 1982 Ford Escort and a 1974 Chevrolet Impala.
5. On March 2, 1988, the Wibbenmeyers' Ford Escort was covered by an automobile liability insurance policy issued by defendant American Family which included underinsured motorist coverage.
6. On March 2, 1988, the Wibbenmeyers' 1974 Chevrolet Impala was covered by an automobile liability insurance policy issued by defendant American Family, policy *142 number XX-XXXXXX-XX which included underinsured motorist coverage.
7. The underinsured motorist coverage on the Ford Escort and the Chevrolet Impala was in the amount of $100,000 per person for each vehicle.
8. Commercial Union has paid to and on behalf of Richard Wibbenmeyer the sum of $100,000 under its insurance policy covering Douglas Edward Ramsey and his parents' 1978 Chevrolet Impala, representing the limits of liability for bodily injury under the Commercial Union policy.
9. Richard Wibbenmeyer has performed all conditions precedent contained in defendant's automobile liability insurance policy. Alternatively, noncompliance has not prejudiced defendant and has not been raised as an affirmative defense in this case with the understanding that defendant asserts as a set-off the $100,000 payment to Richard Wibbenmeyer from Commercial Union.
10. The parties to this case waived jury trial. The only witnesses testifying in person before this Court were Richard O. Wibbenmeyer and John Morin, an American Family Mutual Insurance Company underwriter, who testified as to the issue of notice of the underinsured motorist coverage endorsement of December 1984, received into evidence.
11. Richard O. Wibbenmeyer testified credibly that he did not receive the aforementioned endorsement.
12. Morin testified as to the computer generated mailing of the 12/84 endorsement to all insureds. Morin testified further that he had no evidence of the individual mailing of the endorsement to Richard O. and Rose Wibbenmeyer, nor of their receipt of the endorsement.
13. The language of the December 1984 underinsured motorist coverage provides, in pertinent part, as follows:
LIMITS OF LIABILITY
The limits of liability shown in the declarations apply, subject to the following:
1. The limit for each person is the maximum for bodily injury sustained by one person in any one accident.
2. Subject to the limit for each person, the limit for each accident is the maximum for bodily injury sustained by two or more persons in any one accident. We will pay no more than these maximums no matter how many vehicles are described in the declarations, insured persons, claims, claimants or policies or vehicles are involved in the accident.
Any amounts payable will be reduced by:
1. A payment made by the owner or operator of the underinsured motor vehicle or organization which may be legally liable.
2. A payment under the liability coverage of this policy.
3. A payment made or amount payable because of bodily injury under any workers' compensation or disability benefits law or any similar law.
OTHER INSURANCE
If there is other similar insurance on a loss covered by this endorsement, we will pay our share according to this policy's proportion of the total limits of all similar insurance. But, any insurance provided under this endorsement for an insured person while occupying a vehicle you do not own is excess over any other similar insurance.
Joint Exhibit # 4, p. 10.
14. The following joint exhibits were received into evidence by the Court:
Commercial Union Face Sheet for liability policy of Dennis and Mary Martha Ramsey from January 1 through July 5, 1988 with limits of $100,000/$300,000.
Sample Commercial Union Automobile Liability Insurance Policy.
Release of June 14, 1988 signed by Richard O. Wibbenmeyer, Rose Wibbenmeyer and Richard M. Wibbenmeyer for $100,000 releasing the Ramseys.
American Family Specimen Policy ED. 4/83 with Underinsured Motorist Coverage Endorsement of 12/84.
American Family Policy ED 4/83 with Underinsured Motorist Coverage Endorsement of 4/82.
American Family Agent File Information on 1982 Ford Escort.
*143  American Family Agent File Information on 1974 Chevrolet Impala.
 Automobile Identification Insurance Card on both 1982 Ford Escort and 1974 Chevrolet Impala showing underinsured coverage on both in effect on March 2, 1988.
 Cancelled checks for premium payments to American Family for 1982 Ford Escort and 1974 Chevrolet Impala dated 2/7/88 and 2/14/88.

Conclusions of Law
The parties jointly submitted this case to the Court for determination of the following legal issues:
1. Whether the language of the American Family Mutual Insurance Company automobile liability policy covering the two Wibbenmeyer automobiles and in effect as of March 2, 1988 can be construed as requiring that any payment, settlement, judgment or the like allegedly due Richard Wibbenmeyer in accordance with the terms of the American Family underinsured motorist coverage must be reduced by the $100,000 Richard Wibbenmeyer received from Commercial Union Insurance Company; and
2. Whether "stacking" of the American Family underinsured motorist coverage, based upon the two separate automobiles covered and for which two separate premiums were paid, ought to be allowed.
Construing the same American Family underinsured motorist policy language as is at issue here, the U.S. Court of Appeals for the Eighth Circuit did not find it necessary to address the stacking issue, but found instead that underinsured motorist coverage is, by definition, excess coverage. Weber v. American Family Mut. Ins. Co., 868 F.2d 286 (8th Cir.1989). The insurance company's argument and the Court's response are illustrative:
American Family contends ... that it did not intend Weber's underinsured motorist coverage to be excess over any amounts received from Wallace or her insurance carrier, and that the policy language was changed [in the December 1984 endorsement] to reflect that intent. We disagree. We believe the new language represents nothing more than an attempt to frame an excess coverage clause in other language. Any other analysis would render the term "underinsured motor vehicle" meaningless or, at least, misleading.
Id. at 288.
The District Court in Weber explicitly declined to reach the stacking issue and implicitly refused to treat the underinsured motorist coverage as excess insurance, inasmuch as it determined that the other driver's $100,000 coverage acted as a complete set-off to Weber's $100,000 underinsured motorist coverage, even though Weber's damages were $160,000. The Eighth Circuit reversed the district court's implicit determination that the underinsured motorist coverage is not excess insurance, holding that Weber's underinsured motorist coverage was liable for $60,000.
The above reasoning is, of course, binding on this case. The only difference is that here plaintiff has two underinsured motorist endorsements. The Court finds, nevertheless that, because the Wibbenmeyers bought the benefit of $200,000 worth of excess coverage, they should receive those benefits. In this case, in a sense, the Wibbenmeyers themselves are underinsured at the $100,000 limit of their first policy. Young Wibbenmeyer's damages, at $300,000, are in excess of the other driver's $100,000 policy limits and the Wibbenmeyers' first $100,000 policy limit. Therefore, because both Wibbenmeyer underinsured motorist policies are needed to cover the damages their son sustained, and because the Wibbenmeyers paid for $200,000 of excess coverage, it is proper that they have the benefit of what they purchased.
The Court is aware that since the Weber opinion was written, the Missouri Supreme Court has addressed the issue of stacking liability insurance in Noll v. Shelter Ins. Cos., 774 S.W.2d 147 (Mo.1989) (en banc). However, because underinsured motorist coverage is by definition excess coverage, in contrast to liability coverage, the Court finds that the issue of "stacking" is really *144 inapposite, and that the Noll case does not control the factual scenario in this case.
On the issue of set-off, Weber is controlling and that Noll is also felicitous. Because underinsured motorist coverage is not statutorily mandated, the parties are free to contract as they choose, so long as the language is clear and unambiguous and does not render the coverage meaningless. The Eighth Circuit effectuated the same American Family set-off language in Weber. That decision binds this Court.

Conclusion
For the above reasons, the Court finds that set-off of other insurance payments made is permissible under the clear language of the policy at issue here. The Court also finds that there is not true "stacking" with underinsured motorist coverage. "Underinsured" means, under the Court's interpretation of Weber v. American Family Mut. Ins. Co., excess coverage. Therefore, American Family is liable to the policy limits of both the Wibbenmeyer's underinsurance policies, a total of $200,000, representing the amount of Richard Wibbenmeyer's injuries of $300,000 less the $100,000 payment under the Ramseys' Commercial Union policy.