124 N.J. Super. 227 (1973)
305 A.2d 820
JOHN F. CONKLIN AND KATHERINE V. CONKLIN, PLAINTIFFS,
v.
RONALD M. HEYMANN, DIRECTOR OF THE DIVISION OF MOTOR VEHICLES OF THE STATE OF NEW JERSEY, AND ALLSTATE INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 31, 1973.
*228 Mr. Melvin Tolstoi for plaintiffs (Mr. William O. Barnes, attorney).
Mr. Rocco D'Ambrosio for defendant Allstate Insurance Company (Messrs. O'Donnell, Leary and D'Ambrosio, attorneys).
GASCOYNE, J.C.C., Temporarily Assigned.
Plaintiffs instituted suit against Ronald M. Heymann, Director of Motor Vehicles (Director), seeking recovery pursuant to N.J.S.A. 39:6-78 relating to "hit and run" cases. In the alternative, action was brought against Allstate Insurance Co. (Allstate) seeking a declaratory judgment under a policy of insurance issued by it. The declaratory judgment sought construction of two provisions of the uninsured motorist endorsement. A motion for summary judgment was made on behalf of the Director and was granted. The following *229 facts are germane to the resolution of the remaining issue, construction of the insurance policy.
The parties stipulated that (1) on May 16, 1970 Katherine W. Conklin was a passenger in a vehicle operated by her husband, John F. Conklin; (2) the vehicle was owned by General Adjustment Bureau, Inc. (GAB), Conklin's employer; (3) as a result thereof both plaintiffs were injured and now seek recovery against their insurance company, Allstate Insurance Co. (Allstate); (4) the Conklins carry uninsured motorist (UMI) coverage with Allstate.
John F. Conklin testified that while operating the vehicle he was forced off the road by an unknown vehicle. Proofs established that the police arrived at the scene and investigated. At the scene the police were satisfied that Conklin's physical condition was "apparently ok" and that there was no drinking involved. He told the police that "a car coming in the opposite direction with bright lights on forced him to veer off the traffic way."
There is no dispute that at the time of the accident GAB was insured by Home Indemnity Company (Home). John F. Conklin testified that while he knew this to be a fact, he did not know whether or not Home had UMI coverage. The Unsatisfied Claim and Judgment Fund (Fund) was notified of the accident. On October 8, 1970 the Fund advised the Conklins that there would be no protection by it because it had been advised by Home that it had UMI coverage.
On November 20, 1970 the Conklins were advised that Home had no such coverage. Just shortly prior to receipt of this notification Conklin had questioned his superior at GAB as to UMI coverage. His superior advised that he did not think there was such coverage but he would check it out.
The Conklins both testified that they had discussed the accident with one George Nicoli, their Allstate agent, early in June 1970 but this was collateral to other matters.
*230 On December 11, 1970 Allstate was put on notice of the accident by counsel for the Conklins. The pertinent portions of the policy provide that "hit-and-run vehicle" means
* * * (i) a highway vehicle which causes an accident resulting in bodily injury to an insured arising out of physical contact of such vehicle with the insured or with a vehicle which the insured is occupying at the time of the accident, or (ii) a highway vehicle which without physical contact with the insured or with a vehicle which the insured is occupying at the time of the accident causes bodily injury to an insured arising out of an accident in New Jersey, provided:

* * *
(b) the insured or someone on his behalf shall have reported the accident within 48 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and

* * *
(d) with respect to subdivision (ii) the facts of such accident can be corroborated by competent evidence other than the testimony of any person having a claim under this or any other similar insurance as the result of such accident; * * *.
Allstate takes the position that there is no coverage for two reasons: (1) there has been a failure to comply with the condition that the company be notified within 30 days after the accident; (2) there has been a failure to comply with the requirement that the "no contact accident" be corroborated by competent evidence other than by a person having a claim.
An examination of the cases in New Jersey indicates that there has been no construction of these provisions by any court of this State. Thus, in construing both of these provisions the court should not be unmindful that New Jersey is unique in that it requires coverage in "no contact" cases, as distinguished from other jurisdictions that require contact before any recovery is allowed. Those jurisdictions requiring contact do so with the design *231 to curb fraud, collusion, and other abuses arising from claims that "phantom cars" had caused accidents which, in fact, had resulted solely from the carelessness of the insured. For example, a driver who fell asleep and hit a telephone pole might claim he had swerved off the road to avoid being hit by an unidentified vehicle. The provision requiring physical contact with the unknown vehicle was added to the statute in order to eliminate such fictitious claims. * * * [Hanover Insurance Co. v. Carroll, 241 Cal. App.2d 558, 50 Cal. Rptr. 704 at 706-707]
It is in this clime that construction of these clauses is now undertaken.

I
It is obvious that Allstate was not notified of the accident within 30 days of the date of the accident, May 16, 1970. The question, then, is whether in the light of the facts in this case coverage should be denied because of late notice.
Our courts have consistently recognized that the basic purpose of automobile insurance is the protection of the policy holder against loss resulting from the operation of a motor vehicle. As a concomitant with the public policy our Supreme Court had held that
* * * [W]e have recognized that the terms of an insurance policy are not talked out or bargained for as in the case of contracts generally, that the insured is chargeable with its terms because of a business utility rather than because he read or understood them, and hence an insurance contract should be read to accord with the reasonable expectations of the purchaser so far as its language will permit. Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 305 (1965); Merchants Indemnity Corp. v. Eggleston, 37 N.J. 114, 121 (1962); Mazzilli v. Accident & Casualty Ins. Co. of Winterthur, 35 N.J. 1, pp. 7-8 (1961); Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 488 (1961). [Cooper v. Government Employees Ins. Co. 51 N.J. 86, 93 (1968)]
The court went on to say:
[W]hat is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the insured the very thing paid for. This is not to belittle the need for notice of an accident, *232 but rather to put the subject in perspective. Thus viewed, it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach. To do so would be unfair to insureds. It would also disserve the public interest, for insurance is an instrument of a social policy that the victims of negligence be compensated. To that end companies are franchised to sell coverage.
* * * The insurance contract not being a truly consensual arrangement and being available only on a take-it-or-leave it basis, and the subject being in essence a matter of forfeiture, we think it appropriate to hold the carrier may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice. The burden of persuasion is the carrier's. [Id. at 94]
Cognizance is given to the fact that the court in Cooper was construing a different type of notice provision than the one presently under consideration. However, there seems to be no logical reason to differentiate between the provisions, for the purposes of construing the provision in the present case.
Thus, with these criteria in mind, this court finds that there was a breach of the notice provision. Allstate had failed to sustain its burden of proof of showing the likelihood of appreciable prejudice, after giving due deference to the admonition that the proofs should be scanned to avoid fraud, collusion and other abuses. There is a paucity of proofs to show that Allstate is in any worse position on December 11, 1970 when notice was sent that it would have been on May 17, 1970, the day following the accident. All the facts indicate willingness on part of defendants to cooperate, and this dispels any claim of fraud or collusion on their parts.

II
We now turn to the construction of V(ii)(d), the provision requiring that a no contact accident be "corroborated by competent evidence other than the testimony of any person having a claim." In construing insurance contracts certain basic principles are to be applied. Ambiguities are *233 to be construed in favor of the assured, Bryan Constr. Co., Inc. v. Employer's Surplus Lines Ins. Co., 60 N.J. 375 (1972). The other guidelines were laid down in Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1 (1961), and as restated in the Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504. Mazzilli stated
Solution of a problem of construction of an insurance policy must be approached with a well settled doctrine in mind. If the controlling language will support two meanings, one favorable to the insurer, and the other favorable to the insured, the interpretation sustaining coverage must be applied. Courts are bound to protect the insured to the full extent that any fair interpretation will allow. Kievit v. Loyal Protective Life Ins. Co., etc., 34 N.J. 475 (1961). Moreover, in evaluating the insurer's claim as to the meaning of the language under study, courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question; also whether judicial decisions appear in the reports attributing a more comprehensive significance to it than that contended for by the insurer. Mahon v. American Cas. Co. of Reading, Pennsylvania, 65 N.J. Super. 148 (App. Div. 1961). [35 N.J. at 7]
Bearing in mind these general principles, we come to the interpretation of the words "corroborated by competent evidence". Does it mean that there had to be a disinterested witness? If this is so, it would open the door wide for collusion and fraud, the very things sought to be protected against. We construe this phrase to include such things as the on-the-scene investigation by the police and timely reporting to the insurance company, in this case Home, albeit mistakenly.
In reaching this conclusion it is felt that the language of the court in Chicago Ins. Co. v. Security Ins. Co. of Hartford, 111 N.J. Super. 291 (App. Div. 1970) is apropos. The court held (at 295) that "the language of the omnibus clause of a policy is to be construed broadly in favor of the insured and injured persons to effectuate a strong legislative policy of assuring financial protection for innocent victims of automobile accidents." The public policy in this case is articulated *234 by the Legislature in N.J.S.A. 17:28-1.1, 1.2 and in pari materia with the Motor Vehicle Security Responsibility Act, the Unsatisfied Claim and Judgment Fund Law and the Motor Vehicle Liability Security Law, the common purpose of which is "to afford reasonably complete remedies to victims of motor vehicle accidents." New Jersey Legislature Report & Recommendations (1952), at 9. The overriding state interest or public policy is to have a viable insurance program available to New Jersey motor vehicle registrants. Thus, the term "competent evidence" should be given its broadest construction. To do otherwise would effectively eliminate coverage in no contact accidents. The insured would be paying a premium for coverage which would be difficult if not impossible to enforce unless resort was made to fraud or collusion.
For the reasons set forth above, it is determined that Allstate affords coverage to the Conklins, and judgment will be entered accordingly.