396 S.E.2d 737

STATE AUTOMOBILE MUTUAL
INSURANCE COMPANY

v.

Anthony B. YOULER and
Mildred S. Youler.

No. 19373.

Supreme Court of Appeals of
West Virginia.

July 20, 1990.

Dale Buck, Jackson & Kelly, Martinsburg, for State Auto. Mut. Ins. Co.

D. Michael Burke, Lawrence M. Schultz, Askin, Pill, Scales & Burke, L.C., Martinsburg, for Anthony B. Youler and Mildred S. Youler.

James C. Peterson, amicus chair, Charleston, G. David Brumfield, President, Welch, Vincent J. King, Member, Charleston, for West Virginia Trial Lawyers Ass'n, filed an amicus curiae.

McHUGH, Justice:

This case is before this Court upon certified questions from the Circuit Court of Berkeley County, West Virginia.[1] The case presents issues of first impression to this Court pertaining to underinsured motorist coverage. The three general areas of concern are: (1) delay in giving notice of an automobile accident to one's own insurer providing underinsured motorist coverage; (2) antistacking language in the policies; and (3) policy language allegedly requiring a setoff of the tortfeasor's liability insurance coverage against the underinsured motorist coverage. We believe the circuit court answered the primary issues correctly in part and incorrectly in part, and the case is remanded for further proceedings consistent with this opinion.

## I.

### A. *Damages and Insurance Coverage*

On May 9, 1985, Anthony Youler was struck and injured by a car driven by an individual named Clifford Moore. On May 20, 1985, Anthony Youler and Mildred

---

1. See *W.Va.R.App.P.* 13; *W.Va.Code,* 58–5–2 [1967].

Youler, his mother whose business premises were also damaged by the incident, brought a civil action against Clifford Moore. The complaint against Moore sought recovery of $500,000 of compensatory damages for Anthony Youler's personal injuries. The complaint against Moore also sought recovery of $5,000 of property damage as well as $10,000 of consequential damages (loss of business profits) sustained by Mildred Youler.

On February 24, 1988, Moore's automobile liability insurance carrier, Nationwide Mutual Insurance Company, offered to the Youler's $50,000, the liability policy's bodily injury limits for one person. The Youlers refused to accept the offer of $50,000 as full satisfaction of their claim. The Youler's action against Moore has not yet gone to trial.

The Youlers were covered by the underinsured motorist provisions of two automobile insurance policies issued by State Automobile Mutual Insurance Company ("State Auto"). Each of these two underinsured motorist policy endorsements contains limits of $100,000 for bodily injury of one person in an automobile accident.[2]

### B. *Policy Language*

Both of the Youlers' automobile insurance policies contain a part, applicable to all coverages, on "Duties After an Accident or Loss[.]" One of the "General Duties" thereunder is that the insurer, State Auto, "must be notified promptly of how, when and where the accident or loss happened." In the same part of the policies, one of the "Additional Duties for Uninsured [or Underinsured] Motorists Coverage" is that a person seeking such coverage must also "[p]romptly send [State Auto] copies of the legal papers if a suit is brought." State Auto received notice of the accident in question, in the form of a copy of the Youlers' complaint against Moore, nearly

three years after the accident occurred, specifically, on April 26, 1988. Counsel for the Youlers, who had replaced their prior attorney, furnished the notice to State Auto.

Both of the Youlers' automobile insurance policies also contain what is commonly known as "antistacking" language applicable purportedly to all coverages, including uninsured/underinsured motorist coverages. The antistacking language appears in the "Two or More Auto Policies" section of the "General Provisions" of each policy and reads as follows: "If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy."[3]

Both of the Youlers' automobile insurance policies further contain what is commonly known as "setoff" or "reduction" language applicable to underinsured (or uninsured) motorist coverage. The setoff language in each policy reads as follows: "Any amounts otherwise payable for *damages* under this endorsement [on uninsured/underinsured motorist coverage] shall be reduced by all sums paid because of the bodily injury or property damage by or on behalf of persons or organizations who may be legally responsible." (emphasis added)

### C. *Trial Court Proceedings*

After receiving notice of the Youlers' claim for underinsured motorist coverage, State Auto brought a declaratory judgment action in the Circuit Court of Berkeley County, West Virginia ("the trial court") to determine the rights and liabilities of the parties under the insurance policies issued by State Auto to the Youlers. The Youlers thereafter answered State Auto's com-

---

**2.** The two policies were purchased by Mildred Youler and covered both her and her son, Anthony Youler. The record presented to us does not disclose, and no issue is raised concerning, the premium costs for the two policies, as compared with the premium costs had one policy been issued for all of the Youlers' motor vehicles.

**3.** Each of the two policies also contains this antistacking language: "The limits of liability applicable to Uninsured Motorists Coverage or Underinsured Motorists Coverage are the most we will pay regardless of the number of: ... [para.] 3. Vehicles or premiums shown in the Schedule or in the Declarations[.]"

plaint for declaratory relief and subsequently moved for summary judgment on their counterclaim for declaratory relief.

State Auto contended before the trial court, and now contends before us, that: (1) the Youlers are not entitled to any underinsured motorist coverage under the two policies because the Youlers did not promptly notify State Auto of the accident and of the Youlers' action against Moore, as required by such policies; (2) if the Youlers are entitled to any underinsured motorist coverage, such coverage is limited initially by the antistacking language in the policies applicable purportedly to the underinsured motorist coverage, so that the limits of liability for underinsured motorist coverage are $100,000, not $200,000 by stacking or aggregating the limits of the two policies; and (3) Moore's $50,000 liability insurance coverage is to be set off against the $100,000 limits, leaving a $50,000 liability, at the most, of State Auto to the Youlers.

The Youlers, on the other hand, contended before the trial court, and now contend before us, that: (1) they are entitled to underinsured motorist coverage because State Auto was not prejudiced by the delay in receiving notice of the accident and of the Youlers' action against Moore; (2) the antistacking language in the policies applicable purportedly to the underinsured motorist coverage is void as repugnant to the full indemnification public policy of the underinsured motorist statute; and (3) Moore's $50,000 liability insurance coverage is not to be set off against the underinsured motorist coverage limits (of $200,000, by stacking the limits of the two policies), but against Anthony Youler's damages of $500,000, leaving a $450,000 uncompensated loss, $200,000 of which is to be paid by State Auto as within the stacked or aggre-

gated limits of underinsured motorist coverage under the two policies.

The trial court denied the Youlers' motion for summary judgment, and, along with the parties, certified several questions to this Court.

## II.

### A. *Notice to Insurer Providing Uninsured/Underinsured Motorist Coverage—When Duty to Notify Arises*

The first two certified questions relate to when an insured's duty arises to notify his or her insurer providing uninsured or underinsured motorist coverage that the insured has sustained a loss as a result of an automobile accident allegedly due to the negligence of a third party.[4]

■ The unanimous opinion of the courts deciding the few reported cases on this particular issue is that the notice provisions of an automobile insurance policy ordinarily are activated in a case of uninsured or underinsured motorist coverage, not when there has been an accident, but when the insured, with reasonable diligence, ascertains that the alleged tortfeasor is uninsured or underinsured. *See, e.g.,* syl. pt. 1, *Haas v. Freeman,* 236 Kan. 677, 693 P.2d 1199 (1985) (underinsured motorist); *Chiro v. Merchants Mutual Insurance Co.,* 49 A.D.2d 686, 687, 371 N.Y.S.2d 30, 32 (1975) (mem. decision), *aff'd by mem. decision,* 40 N.Y.2d 852, 356 N.E.2d 480, 387 N.Y.S.2d 1009 (1976); *Squires v. National Grange Mutual Insurance Co.,* 247 S.C. 58, 68, 145 S.E.2d 673, 678 (1965); *Lee v. Lee,* 732 S.W.2d 275, 276 (Tenn.1987); *Finney v. Farmers Insurance Co.,* 21 Wash.App. 601, 607–09, 586 P.2d 519, 524 (1978), *aff'd on other points,* 92 Wash.2d 748, 600 P.2d 1272 (1979) (en banc). We now adopt this rule.

**4.** The first two certified questions are as follows:

1. Does a Plaintiff/insured in an underinsured motorist claim have a duty to notify his insurance carrier of a potential claim prior to learning that the Defendant's liability insurance coverage is inadequate to cover losses suffered by the injured insured?

Answer by the Circuit Court: Yes.

2. Does a Plaintiff/insured have a duty to notify his insurance carrier of a potential underinsured motorist claim promptly upon learning that the Defendant's liability insurance coverage may be inadequate to cover losses incurred by the insured?

Answer by the Circuit Court: Yes, subject to No. 1.

Accordingly, the answer to certified question number 1, *see supra* note 4, is no, and the answer to certified question number 2, *see supra* note 4, is yes, subject to the discussion immediately *infra* in section II.B. of this opinion.

B. *Notice to Insurer Providing Uninsured/Underinsured Motorist Coverage—Effect of Delay in Notifying*

■ Certified question number 3 relates to whether prejudice to the insurer in a case of uninsured or underinsured motorist coverage is a material factor to be considered in determining if a delay in notifying such insurer of an accident justifies the denial of coverage.[5]

■ A provision in an automobile insurance policy requiring the insured to give "prompt" notice or notice "as soon as practicable" to the insurer of an accident means that the notice must be given within a reasonable period of time. *See* syl., *Ragland v. Nationwide Mutual Ins. Co.*, 146 W.Va. 403, 120 S.E.2d 482 (1961); syl. pt. 3, *Black & White Cab Co. v. New York Indemnity Co.*, 108 W.Va. 93, 150 S.E. 521 (1929), *as modified on denial of reh'g.* The particular language used in the automobile insurance policy as to the time in which notice must be given is not control-

ling; regardless of the language used, whether "immediate," "prompt," "forthwith," "as soon as practicable" or words of similar import, the courts are generally in agreement that reasonable notice is sufficient. *Ragland*, 146 W.Va. at 409, 120 S.E.2d at 485.

■ Generally, whether notice has been given to an automobile insurer within a reasonable period of time is an issue to be resolved by the fact finder. *State Farm Fire & Casualty Co. v. Scott*, 236 Va. 116, 120, 372 S.E.2d 383, 385 (1988); *State Farm Mutual Automobile Insurance Co. v. Milam*, 438 F.Supp. 227, 232 (S.D.W.Va. 1977) (anticipating West Virginia law).

■ The purpose of a notice provision in an automobile insurance policy is to give the insurer an opportunity to make a timely and adequate investigation of all the circumstances surrounding the event which resulted in a claim being made against the insurer. *Ragland*, 146 W.Va. at 407, 120 S.E.2d at 484. There is a split of authorities on whether prejudice to these investigative interests of the insurer is a material factor in deciding whether uninsured or underinsured motorist coverage is justifiably denied because of the delay in notifying the insurer of the accident.

**5.** Certified question number 3 is as follows:

3. If an insured fails to give 'prompt' notice to his or her underinsured motorist carrier, is the carrier required to prove that prejudice has resulted from the delay in order to justify a denial of coverage?
Answer by the Circuit Court: Yes.
Certified question number 4 reads as follows:
4. If an insured fails to give notice to his underinsured motorist carrier until nearly three (3) years have elapsed after an accident or loss, is the carrier required to prove that prejudice has resulted from the delay in order to justify a denial of coverage?
Answer by the Circuit Court: Refused to certify on the grounds that such a determination requires a case by case analysis.
We do not address this issue separately because the trial court did not decide the same and certify it to us (nor, apparently, did the parties *agree* to certify it). *See Wolfe v. City of Wheeling*, 182 W.Va. 253, 256 n. 5, 387 S.E.2d 307, 310 n. 5 (1989); *Horace Mann Insurance Co. v. Leeber*, 180 W.Va. 375, 381 n. 11, 376 S.E.2d 581, 587 n. 11 (1988), and the cases cited there. In any event, our textual discussion *infra* of certi-

fied question number 3 covers this general area and indicates that the length of the delay in notifying the insurer in a case of uninsured or underinsured motorist coverage is only one of the factors to be considered.
Certified question number 5 reads as follows:
5. Is the underinsured motorist claim of an insured barred when the insured's attorney has failed to promptly notify the insured's automobile insurance carrier of the underinsured motorist claim?
Answer by the Circuit Court: No.
We do not address this issue separately; it is subsumed by our discussion of certified question number 3. In a certified case this Court will not consider certified questions not necessary to a decision of the case, and upon receiving certified questions we retain some flexibility in determining how and to what extent they will be answered. *Gardner v. Norfolk & Western Ry.*, 179 W.Va. 724, 726–727 n. 6, 372 S.E.2d 786, 789 n. 6 (1988), *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1132, 103 L.Ed.2d 193 (1989), and the cases cited there. *See also* syl. pt. 5, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990); *Deeds v. Lindsey*, 179 W.Va. 674, 676–677 n. 2, 371 S.E.2d 602, 604 n. 2 (1988).

Some of the precedents hold that prejudice, or the absence thereof, to the investigative interests of the insurer, due to delayed notice of the accident, is immaterial in a case involving uninsured or underinsured motorist coverage, on the ground that lack of timely notice is a breach of a condition precedent of the insurance contract justifying, by itself, a denial of coverage. *See, e.g., State Farm Mutual Automobile Insurance Co. v. Tarantino*, 114 Ariz. 420, 423–25, 561 P.2d 744, 747–49 (1977) (in division) (prejudice presumed, apparently irrebuttably, after delay of four and one-half years); *Gizzi v. State Farm Mutual Insurance Co.*, 56 A.D.2d 973, 973–74, 393 N.Y.S.2d 107, 108 (1977) (mem. decision) (absent valid excuse, failure to satisfy notice requirement vitiates policy, and insurer need not show prejudice); *Lee v. Lee*, 732 S.W.2d 275, 277 (Tenn.1987) (failure to give notice within reasonable time justifies, by itself, denial of coverage); *Dairyland County Mutual Insurance Co. v. Roman*, 498 S.W.2d 154, 157 & n. 2 (Tex.1973) (provision in insurance contract requiring notice of accident to be given to insurer is condition precedent to coverage, and failure to perform condition constitutes absolute defense to liability on policy, even though insurer had actual notice of accident and was not prejudiced by lack of formal written notice from insured) (rule changed, however, by statute requiring insurer to show prejudice for certain types of coverage).

Some of the precedents in cases involving uninsured or underinsured motorist coverage hold that prejudice to the insurer from delayed notice of the accident is a factor to be considered, but hold that there is a rebuttable presumption of prejudice and require the insured to show that the insurer was not prejudiced by the delay. *See, e.g., Klein v. Allstate Insurance Co.*, 367 So.2d 1085, 1086 (Fla.Dist.Ct.App.1979); *Gerrard Realty Corp. v. American States Insurance Co.*, 89 Wis.2d 130, 146–47, 277 N.W.2d 863, 871–72 (1979) (holding applies

to all types of insurance after delay of more than one year).

The majority of the precedents, however, do not allow a denial of uninsured or underinsured motorist coverage for delayed notice of the accident to the insurer unless the delay was unreasonable, considering, among other things, whether the insurer was prejudiced, and the insurer bears the burden of proving prejudice. *See, e.g., State Farm Mutual Automobile Insurance Co. v. Burgess*, 474 So.2d 634, 636–38 (Ala.1985); *Hanover Insurance Co. v. Carroll*, 241 Cal.App.2d 558, 565–66, 50 Cal. Rptr. 704, 708–09 (1966), *hearing denied* (Cal. June 17, 1966); *Barnes v. Lumbermen's Mutual Casualty Co.*, 308 So.2d 326, 328 (La.Ct.App.1975); *Ouellette v. Maine Bonding & Casualty Co.*, 495 A.2d 1232, 1234–35 (Me.1985); *Motor State Insurance Co. v. Benton*, 35 Mich.App. 287, 290, 192 N.W.2d 385, 387, *leave to appeal denied*, 386 Mich. 758 (1971); *Reese v. Preferred Risk Mutual Insurance Co.*, 457 S.W.2d 205, 211 (Mo.Ct.App.1970), *application to transfer denied* (Mo. Sept. 14, 1970); *Colangelo v. Bankers & Shippers Insurance Co.*, 185 N.J.Super. 205, 210–11, 447 A.2d 1356, 1359 (Law Div.1982); *Pennsylvania General Insurance Co. v. Becton*, 475 A.2d 1032, 1035 (R.I.1984); *Squires v. National Grange Mutual Insurance Co.*, 247 S.C. 58, 67, 145 S.E.2d 673, 677 (1965); *Washington Insurance Guaranty Association v. Hill*, 19 Wash. App. 195, 196–98, 574 P.2d 405, 406 (1978).[6]

An increasing number of jurisdictions are following the already-majority view of considering prejudice to be a material factor in determining the reasonableness of the notice and requiring the insurer to bear the burden of showing prejudice from the delay in receiving notice of the accident. *See* 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 16.2, at 8, § 42.1, at 108–09 (2d ed. 1990). *See also* 8C J. Appleman & J. Appleman, *Insurance Law and Practice* § 5083.35, at 293–94

---

**6.** *See also Carver v. McKernan*, 390 Mich. 96, 100, 211 N.W.2d 24, 26 (1973); *Rampy v. State Farm Mutual Automobile Insurance Co.*, 278 So.2d 428, 434, 435 (Miss.1973); *Conklin v. Hey-*

*mann*, 124 N.J.Super. 227, 231–32, 305 A.2d 820, 822 (Law Div.1973); *General Accident Fire & Life Assurance Corp. v. Shasky*, 266 Or. 312, 321, 512 P.2d 987, 991 (1973).

(1981); A. Windt, *Insurance Claims and Disputes* § 1.04, at 13–14 (2d ed. 1988) (discussing various types of insurance). We agree with the following comments by Professor Widiss:

> Courts should exercise restraint in regard to requiring strict technical compliance with coverage provisions that require the notice of an accident or proof of claim requirements. An allocation of the burden of proof on this issue to the insurer seems warranted for several reasons, including (1) the insurer is in the best position to evaluate the consequences of not having received notice, (2) in general it is very difficult to show the negative effects of various events, in contrast with demonstrating what the actual consequences were, and (3) in cases in which there is a dearth of evidence as to the effect of the late notice the coverage is not lost. When it is not evident that an insurer was prejudiced, an insurer should be required to show why the delay adversely affected its position. In the absence of such proof, there should not be a forfeiture of the uninsured [or underinsured] motorist coverage.

2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 16.2, at 20 (2d ed. 1990). In addition, some of the urgency that exists in a liability insurance notice case is missing in an underinsured motorist notice case because, as in the present case, another insurer (the automobile liability insurer of the alleged tortfeasor) is already investigating and defending against the claim.[7]

This Court therefore holds that in an uninsured or underinsured motorist case, prejudice to the investigative interests of the insurer is a factor to be considered, along with the reasons for delay and the length of delay, in determining the overall reasonableness in giving notice of an accident. In the typical case, the insured must put on evidence showing the reason for the delay in giving notice. Once this prerequisite is satisfied, the insurer must then demonstrate that it was prejudiced by the insured's failure to give notice sooner. If the insurer fails to present evidence as to prejudice, then the insured's failure to give notice sooner will not be a bar to the insured's recovery. If the insurer puts on evidence of prejudice, however, the reasonableness of the notice ordinarily becomes a question of fact for the fact finder to decide. On remand, there should be further proceedings consistent with these guidelines.

Accordingly, the answer to certified question number 3, *see supra* note 5, is yes, subject to the discussion in this section (section II.B.) of this opinion.

### III.

#### A. *Stacking of Underinsured Motorist Coverages—Statutory and Case Law Background*

Certified question numbers 6, 7 and 7(a) relate to whether the limits of more than one underinsured motorist coverage may be combined or stacked by an insured.[8]

---

7. *W.Va.Code*, 33–6–31(d) [1982], effective at the time of the operative facts herein, required an insured seeking *uninsured* motorist coverage to serve upon his or her insurer a copy of the *complaint and summons* in the action against the *uninsured* motorist. Effective June 10, 1988, this subsection of the statute was amended to require such service also when *underinsured* motorist coverage is sought. Neither version of the statute specifies a time limit for such service. We therefore believe the statute contemplates a reasonable period of time for such service. *See, e.g., State Farm Mutual Automobile Insurance Co. v. Burgess*, 474 So.2d 634, 637–38 (Ala.1985) (same factors, including prejudice, considered in determining reasonableness of notice of accident *and of action* against alleged tortfeasor).

8. Certified question numbers 6, 7 and 7(a) are as follows:

> 6. If an insured is covered simultaneously by two insurance policies providing for underinsured motorist coverage for which separate premiums have been paid on both policies, is the insured entitled to 'stack' his available coverage to compensate his loss?
> Answer by the Circuit Court: Yes.
> 7. If an insured is covered simultaneously by two insurance policies providing for underinsured motorist coverage for which separate premiums have been paid is the insured entitled to 'stack' his available coverage to compensate his loss[,] provided the policies contain no anti-stacking language?
> Answer by the Circuit Court: Yes.

*W.Va.Code*, 33–6–31(b) [1982], applicable to this case, provides, in relevant part, that a motor vehicle liability insurance policy

shall provide an option to the insured with appropriately adjusted premiums to pay the insured *all sums* which he [or she] shall legally be entitled to recover *as damages* from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured.

(emphasis added)  *W.Va.Code*, 33–6–31(b) [1982] also defines an "underinsured motor vehicle" as follows:

'Underinsured motor vehicle' means a motor vehicle with respect to the ownership, operation, or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either (i) less than limits the insured carried for underinsured motorists' coverage, or (ii) has [sic; "have"] been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorist's coverage.

Underinsured motorist coverage was added in 1982 to this statute; the statute previously addressed only uninsured motorist coverage.  It is obvious from the "all sums ... as damages" language of *W.Va. Code*, 33–6–31(b), as amended, that the legislature has articulated a public policy of full indemnification or compensation underlying both uninsured and underinsured motorist coverage in the State of West Virginia.  That is, the preeminent public policy of this state in uninsured or underinsured motorist cases is that the injured person be *fully compensated* for his or her *damages* not compensated by a negligent tortfeasor, up to the limits of the uninsured or underinsured motorist coverage.

Because of this statutorily stated public policy of full indemnification, the Court in syllabus points 3–4 of *Bell v. State Farm*

*Mutual Automobile Ins. Co.*, 157 W.Va. 623, 207 S.E.2d 147 (1974), held that antistacking language in the automobile insurance policies applicable purportedly to the uninsured motorist policy endorsements was void as repugnant to the statute.  *See also W.Va.Code*, 33–6–17 [1957] (any insurance policy provision or condition not complying with insurance statutes will yield to the statutes).

After *Bell*, specifically, in 1979, subsection (k) was added to *W.Va.Code*, 33–6–31.  Subsection (k) provides that nothing contained in *W.Va.Code*, 33–6–31 "shall prevent any insurer from also offering benefits and limits other than those prescribed" in that statute, "nor shall this section be construed as preventing any insurer from incorporating in [sic] such terms, conditions and exclusions as may be consistent with the premium charged."  Under *W.Va.Code*, 33–6–31(k), as amended, this Court has held that "[i]nsurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as such [terms, conditions and] exclusions *do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes.*"  Syl. pt. 3, *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989) (involving underinsured motorist coverage) (emphasis added).  We also stated in *Deel v. Sweeney* that "[t]his Court will continue to be vigilant in holding the insurers' feet to the fire in instances where [terms, conditions,] exclusions or denials of coverage *strike at the heart of the purposes of the uninsured and underinsured motorist statutes* ['] provisions."  *Id.* 181 W.Va. at 463, 383 S.E.2d at 95 (emphasis added).

Antistacking language in an automobile insurance policy which is applicable purportedly to uninsured or underinsured motorist coverage strikes at the heart of the purpose of the uninsured and underinsured motorist statute and conflicts with the spirit and intent of such statute, in that antistacking language thwarts the statutorily

---

7(a).  If an insured is covered simultaneously by two insurance policies providing for underinsured motorist coverage for which separate premiums have been paid, is the in-

sured entitled to stack his available coverage to compensate for his loss when each policy provides [as set forth in note 3, *supra*]?

**Answer by the Circuit Court:  Yes.**

stated public policy of full indemnification. Therefore, *Bell*'s holding on the invalidity of antistacking language in an uninsured motorist case remains valid, *W. Va. Code*, 33–6–31(k), as amended, notwithstanding. *See Government Employees Insurance Co. v. Farmer*, 330 So.2d 236, 238 (Fla. Dist.Ct.App.1976) (statutory language making underinsured motorist coverage "subject to the terms and conditions of such coverage" did not permit antistacking language in automobile insurance policies), *cert. denied*, 341 So.2d 291 (Fla.1976), and *cert. denied*, 342 So.2d 1101 (Fla.1977).

The rationale of *Bell v. State Farm Mutual Automobile Ins. Co.* applies to underinsured, as well as to uninsured, motorist coverage. The statutory policy of full indemnification is stated in *W. Va. Code*, 33–6–31(b), as amended, to apply to *either* of these types of coverage. Consequently, the fact that uninsured motorist coverage is mandatory, while underinsured motorist coverage must be offered but may be declined, is a distinction without a difference here. Once the insured elects to pay for the underinsured motorist coverage, he or she is protected by the public policy of full indemnification. *See, e.g., Hoeschen v. South Carolina Insurance Co.*, 378 N.W.2d 796, 800 (Minn.1985) (repeal of statute on mandatory offer of underinsured motorist coverage was *not* intended to permit insurer to prohibit stacking of *optionally* obtained underinsured motorist benefits). *See generally* annotation, *Combining or "Stacking" Uninsured [or Underinsured] Motorist Coverages Provided in Separate Policies Issued by Same Insurer to Same Insured*, 25 A.L.R. 4th 6 (1983), especially § 6 on underinsured motorist coverage.

B. *Stacking of Underinsured Motorist Coverages—Invalidity of Antistacking Language in Policies*

■ In light of the foregoing discussion, this Court holds that so-called "antistacking" language in automobile insurance policies is void under *W. Va. Code*, 33–6–31(b), as amended, to the extent that such language is applicable purportedly to uninsured or underinsured motorist coverage,

and an insured covered simultaneously by two or more uninsured or underinsured motorist policy endorsements may recover under all of such endorsements up to the aggregated or stacked limits of the same, or up to the amount of the judgment obtained against the uninsured or underinsured motorist, whichever is less, as a result of one accident and injury.

The case of *Shamblin v. Nationwide Mutual Insurance Co.*, 175 W.Va. 337, 332 S.E.2d 639 (1985), is materially distinguishable. In that case we upheld antistacking language applicable to automobile *liability* insurance coverage. *See* syl. pts. 4–5 of *Shamblin*. However, as we stated in syllabus point 5 thereof, antistacking language in the case of *liability* insurance coverage "does not violate any applicable insurance statute or regulation[.]" Here, in contrast, antistacking language in the case of uninsured or underinsured motorist coverage conflicts with the full indemnification public policy of *W. Va. Code*, 33–6–31(b), as amended. We also noted this distinction between liability insurance antistacking language and uninsured or underinsured motorist coverage antistacking language in note 9 of *Shamblin*, 175 W.Va. at 344, 332 S.E.2d at 645. *See also* 8C J. Appleman & J. Appleman, *Insurance Law and Practice* § 5083.35, at 293 n. 2 (1981) (there are public policy reasons, stated in statutes, not to limit uninsured or underinsured motorist coverages unduly, whereas liability insurance contracts are essentially private agreements not subject generally to same rules).

■ Accordingly, the antistacking language in the case now before this Court, which is applicable purportedly to uninsured and underinsured motorist coverages, *see supra* section I.B. of this opinion and note 3, is void with respect to such coverages. Thus, the answer to certified question number 6, *see supra* note 8, is yes; the answer to certified question number 7, *see supra* note 8, is yes, even if there is antistacking language; and the answer to certified question number 7(a), *see supra* note 8, is yes.

## IV.

### A. Setoff of Tortfeasor's Liability Insurance Coverage—The Two Approaches

Certified question number 8 relates to whether the tortfeasor's liability insurance coverage is to be set off against the limits of the underinsured motorist coverage or, instead, against the injured person's damages.[9]

Essentially two approaches emerge from the language of the various state statutes on the manner in which the tortfeasor's liability insurance coverage is to be set off when underinsured motorist coverage is also sought.[10] One approach, espoused generally by insurers and explicitly required by several state statutes, is that the tortfeasor's liability insurance coverage is to be set off against the underinsured motorist coverage limits. This type of underinsured motorist legislation, sometimes called reduction-type or decreasing-layer underinsured motorist coverage, is premised upon the idea that the purpose of underinsured motorist coverage is to put the insured in the same position he or she would have occupied had the tortfeasor's liability insurance limits been the same as the underinsured motorist coverage limits purchased by the insured. Part of this level of coverage is provided in effect by the tortfeasor's liability insurance, and the remainder is provided by the underinsured motorist coverage. *See, e.g., Aetna Casualty & Surety Co. v. Kenner,* 570 A.2d 1172, 1175–77 (Del.1990) (3–2 decision) (underinsured motorist statute requires the total recovery, including amount from tortfeasor's liability insurance, to equal the limits selected by injured person); *Connol-*

*ly v. Royal Globe Insurance Co.,* 455 A.2d 932, 936 (Me.1983) (statute inherently requires setoff against underinsured motorist coverage by virtue of definition of underinsured motor vehicle); *Aetna Casualty & Surety Co. v. Souras,* 78 Md.App. 71, 75–76, 77–78, 552 A.2d 908, 910, 911–12 (1989) ("uninsured" motorist statute, which operates as underinsured motorist coverage *to extent that* liability coverage is less than so-called uninsured motorist coverage); *State Farm Mutual Automobile Insurance Co. v. Kuehling,* 475 So.2d 1159, 1162–63 (Miss.1985) (same); *Descoteaux v. Liberty Mutual Insurance Co.,* 125 N.H. 38, 44–45, 480 A.2d 14, 19 (1984) (same); *Schmick v. State Farm Mutual Automobile Insurance Co.,* 103 N.M. 216, 221–24, 704 P.2d 1092, 1097–1100 (1985) (statute inherently requires setoff against underinsured motorist coverage by virtue of definition of underinsured motor vehicle; recognizing, however, that rule in other states requiring setoff to be against damages is more equitable in that full compensation is thereby more likely); syl., *In re Nationwide Insurance Co.,* 45 Ohio St.3d 11, 543 N.E.2d 89 (1989) (underinsured motorist subrogation statute allows setoff of tortfeasor's liability insurance coverage against limits of underinsured motorist coverage, provided setoff is clearly set forth in insurance policy); *Nationwide Mutual Insurance Co. v. Scott,* 234 Va. 573, 576, 363 S.E.2d 703, 704–05 (1988) ("uninsured" motorist statute requires coverage of underinsured motor vehicle *to extent that* such vehicle is underinsured; defining "underinsured motor vehicle" as one *to extent that* liability insurance is less than so-called uninsured motorist coverage).[11]

---

**9.** Certified question number 8 reads as follows:
> 8. May a motor vehicle insurance company reduce or offset its policy coverage limitations for underinsured motorist coverage by the amount recovered by the insured from a Defendant's liability insurance carrier?
> Answer by the Circuit Court: Yes.

**10.** For a compilation and an analysis of the various states' underinsured motorist legislation, see 3 I. Schermer, *Automobile Liability Insurance* §§ 35.02, 35.04 (2d ed. rev. 1990). W.Va.Code, 33–6–31(b), as amended, adding underinsured motorist coverage in 1982, is con-

spicuously absent from this otherwise thorough compilation and analysis.

**11.** *See also Farmers Alliance Mutual Insurance Co. v. Miller,* 869 F.2d 509, 512–14 (9th Cir.1989) (anticipating Montana law) (setoff against underinsured motorist coverage limits not precluded, inasmuch as such coverage is optional; not mentioning contrary opinion of *Transamerica Insurance Group v. Osborn,* 627 F.Supp. 1405 (D.Mont.1986), *see infra* note 12); *Waylett v. United Services Automobile Association,* 224 Neb. 741, 744–46, 401 N.W.2d 160, 162–63

The second approach to setoffs of liability insurance when underinsured motorist coverage is also sought is that the tortfeasor's liability insurance coverage is to be set off against the amount of *damages* sustained by the injured person, and the insurer providing the underinsured motorist coverage is liable to such injured person, its insured, for any excess, up to the limits of the underinsured motorist coverage. This type of underinsured motorist legislation, sometimes called excess-type or floating-layer underinsured motorist coverage, is premised upon the idea that the injured person is entitled to recover under his or her own underinsured motorist coverage to the extent that the tortfeasor's liability insurance coverage is insufficient to compensate the injured person fully for his or her loss, subject only to the limits of the underinsured motorist coverage. *See, e.g., American States Insurance Co. v. Estate of Tollari,* 362 N.W.2d 519, 521–22 (Iowa 1985); *Wilson v. State Farm Insurance Co.,* 448 So.2d 1379, 1381 n. 1, 1383 (La.Ct.App.1984); *Krombach v. Mayflower Insurance Co.,* 785 S.W.2d 728, 732–35 (Mo.Ct.App.1990); *Mid–Century Insurance Co. v. Daniel,* 101 Nev. 433, 435–37, 705 P.2d 156, 158–59 (1985); · *Garry v. Worldwide Underwriters Insurance Co.,* 120 Misc.2d 91, 91–93, 465 N.Y.S.2d 483, 484 (Sup.Ct.1983), *aff'd by mem. decision,* 101 A.D.2d 717, 475 N.Y.S.2d 307 (1984); *Sentry Insurance Co. v. Grenga,* 556 A.2d 998, 998–1000 (R.I.1989); *Garris v. Cincinnati Insurance Co.,* 280 S.C. 149, 151–55, 311 S.E.2d 723, 725–26 (1984); *Stracener v. United Services Automobile Association,* 777 S.W.2d 378, 381–84 (Tex.1989); *Elovich v. Nationwide Insurance Co.,* 104 Wash.2d 543, 547–52, 707 P.2d 1319, 1322–25 (1985) (en banc); *United Services Automobile Association v. Winbeck,* 30 Wash.App. 769, 770–772, 637 P.2d 996, 997–98 (1981); *Wood v. American Family Mutual Insurance Co.,* 148 Wis.2d 639, 654–57, 436 N.W.2d 594, 600–01 (1989); *Kaun v. Industrial Fire & Casualty Insurance Co.,* 148 Wis.2d 662, 670–73, 436 N.W.2d 321, 324–26 (1989).[12]

### B. Setoff of Tortfeasor's Liability Insurance Coverage—the West Virginia Requirement

■ *W.Va.Code,* 33–6–31(b), as amended, the relevant part of which is quoted at the outset of section III.A. of this opinion *supra,* as well as the setoff language in the insurance policies in this case, *see supra* section I.B. of this opinion, contemplate, we conclude, that the tortfeasor's liability insurance coverage is to be set off against the amount of *damages* sustained by the injured person, not against the underinsured motorist coverage limits. As stated previously, the "all sums ... as damages" language of the statute evinces a public policy of full indemnification or compensation for damages uncompensated

(1987) (no public policy prohibits setoff against underinsured motorist coverage limits); *Wert v. Picciano,* 189 N.J.Super. 178, 182–85, 459 A.2d 697, 699–700 (Law Div.1982) (no public policy prohibits setoff against underinsured motorist coverage limits; stressing optional nature of this coverage); *Nationwide Mutual Insurance Co. v. Massey,* 82 N.C.App. 448, 449–50, 346 S.E.2d 269, 269–70 (1986) (voluntary coverage above statutory minimum is governed by terms of insurance contract, which required setoff of liability insurance against underinsured motorist coverage).

12. *See also Price v. State Farm Mutual Automobile Insurance Co.,* 116 Ill.App.3d 463, 466–68, 470, 72 Ill.Dec. 117, 120–21, 122, 452 N.E.2d 49, 52–53, 54 (1983) (statute now, however, provides for reduction-type coverage); *Michigan Mutual Liability Co. v. Karsten,* 13 Mich.App. 46, 49, 51–52, 163 N.W.2d 670, 671, 672–73, *leave to appeal denied,* 381 Mich. 792 (1968); syl. pt. 2, *Hoeschen v. South Carolina Insurance Co.,* 378 N.W.2d 796 (Minn.1985); syl., *Nurmi v. Foremost Insurance Co.,* 376 N.W.2d 293 (Minn.Ct. App.1985); *Weber v. American Family Mutual Insurance Co.,* 868 F.2d 286, 287–88 (8th Cir. 1989) (anticipating Missouri law); *Wibbenmeyer v. American Family Mutual Insurance Co.,* 720 F.Supp. 141, 143 (E.D.Mo.1989) (anticipating Missouri law); *Transamerica Insurance Group v. Osborn,* 627 F.Supp. 1405, 1407–12 (D.Mont. 1986).

See generally 12A G. Couch, *Couch['s] Cyclopedia of Insurance Law* §§ 45:649, 45:652 (2d ed. M. Rhodes rev. 1981 & Supp.1989); 2 A Widiss *Uninsured and Underinsured Motorist Insurance* § 41.7 (2d ed. 1990); annotation, *Uninsured and Underinsured Motorist Coverage: Recoverability, Under Uninsured or Underinsured Motorist Coverage, of Deficiencies in Compensation Afforded Injured Party by Tortfeasor's Liability Coverage,* 24 A.L.R. 4th 13 (1983).

by the negligent tortfeasor. Thus, the statute requires the following *computation* of underinsured motorist coverage: the total amount of damages, reduced by the liability insurance coverage actually available to the injured person in question; the insurer providing underinsured motorist coverage is liable for the excess or uncompensated damages up to the underinsured motorist coverage limits. This approach furthers the goal of full compensation, without duplicating benefits.

While *W. Va. Code*, 33–6–31(b), as amended, clearly requires this full compensation approach to the computation of underinsured motorist coverage when, as in this case, the injured person's underinsured motorist coverage limits *exceed* the alleged tortfeasor's motor vehicle liability insurance coverage limits actually available to the injured person in question, and, therefore, the alleged tortfeasor's vehicle was an "underinsured motor vehicle" as defined in that statute, this Court is aware of a possible internal inconsistency in this statute, by virtue of the legislature's definition of "underinsured motor vehicle." That definition, comparing the tortfeasor's liability insurance limits with underinsured motorist coverage limits, instead of comparing the liability limits with the total amount of damages sustained by the injured person, causes confusion in cases, *unlike here*, when the underinsured motorist coverage limits are *equal to or less than* the tortfeasor's liability limits, but such liability limits are less than the total amount of damages.[13]

The emphasis upon full compensation for damages was foreshadowed in *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989), wherein this Court stated: "The purpose of optional underinsured motorist coverage is to enable the insured to protect himself [or herself], if he [or she] chooses to do so, against *losses* occasioned by the negligence of other drivers who are underinsured." *Id.* 181 W.Va. at 463, 383 S.E.2d at 95 (emphasis added).

Moreover, courts in other jurisdictions having underinsured motorist legislation very similar to *W. Va. Code*, 33–6–31(b), as amended, have held that the liability insurance coverage is to be set off against total damages. For example, in *American*

---

**13.** *Amicus curiae* in this case, the West Virginia Trial Lawyers Association, argues that the definition of an "underinsured motor vehicle" set forth in *W. Va. Code*, 33–6–31(b), as amended, *see supra* text at the outset of section III.A. of this opinion, allows insurers to offer, and accept premiums for, "illusory, if not fraudulent" underinsured motorist coverage if that statute is construed as not recognizing "underinsured motor vehicle" *status* when the limits of the injured person's underinsured motorist coverage are *equal to or less than* the alleged tortfeasor's liability insurance coverage limits (but the amount of damages exceeds the liability insurance coverage limits). For example, if the injured person has underinsured motorist coverage with bodily injury limits of $20,000 for one person, and the alleged tortfeasor has liability insurance coverage with bodily injury limits of $20,000 for one person (and the damages are $50,000), the injured person has paid premiums for essentially worthless underinsured motorist coverage if, because of the equal coverage limits, the alleged tortfeasor is held not to have operated an "underinsured motor vehicle."

We do not here decide this question as to underinsured motor vehicle *status*. It has not been certified to us, and the *parties* to the case have not briefed us on the same. Moreover, the underinsured motorist coverage limits in this case ($200,000 upon stacking, $100,000 without stacking) are greater than the liability insurance coverage limits ($50,000); therefore, it is undisputed that an "underinsured motor vehicle" was involved herein. We do note that there is a split of authorities on this issue. *See, e.g.,* 3 I. Schermer, *Automobile Liability Insurance* § 35.04[3A] (2d ed. rev. 1990). Again, we leave to another day the question of whether the proper comparison for underinsured *status* is between the tortfeasor's liability insurance limits and the amount of damages, as opposed to between the tortfeasor's liability insurance limits and the underinsured motorist coverage limits. The problem as to the definition of "underinsured motor vehicle" suggests that legislative clarification is needed in that area.

In a case, such as this one, where the underinsured motorist coverage limits exceed the liability insurance coverage limits, any ambiguity as to the *computation* of underinsured motorist coverage, which may be caused by the statutory definition of "underinsured motor vehicle," would be resolved by emphasizing the "all sums . . . as damages" language in the statute, because the uninsured/underinsured motorist statute, *W. Va. Code*, 33–6–31(b), as amended, "is remedial in nature and, therefore, must be construed liberally in order to effect its purpose." Syl. pt. 7, *Perkins v. Doe*, 177 W.Va. 84, 350 S.E.2d 711 (1986).

*States Insurance Co. v. Estate of Tollari,* 362 N.W.2d 519 (Iowa 1985), the underinsured motorist statute stated that it was "for the protection of persons insured under such [motor vehicle liability insurance] policy who are legally entitled to recover damages from the owner or operator of ... an underinsured motor vehicle[.]" The Supreme Court of Iowa held in that case that "a buyer of underinsurance coverage is entitled to recover on that clause [of the policy] for the amount of his [or her] loss that the tortfeasor's liability insurance does not reach, subject to the limit of the underinsurance clause." *Id.* at 522. The court added: "Any other interpretation of underinsurance would mean the victim cannot recover part of the underinsurance limit he [or she] has bought and paid for, and that portion of the [underinsured motorist coverage] limits [, if reduced by the amount of the liability insurance coverage limits,] also would be illusory." *Id.* A New York court similarly stated that to allow a reduction of the underinsured motorist coverage limits by the liability insurance coverage limits would allow the policy to take "away the coverage that the statute required." *Garry v. Worldwide Underwriters Insurance Co.,* 120 Misc.2d 91, 91–93, 465 N.Y. S.2d 483, 484 (Sup.Ct.1983), *aff'd by mem. decision,* 101 A.D.2d 717, 475 N.Y.S.2d 307 (1984). Referring to the underinsured motorist coverage, the court in *Garry* observed: "[T]he dollar amounts of such coverage, which are stated on the face of the policy, are rendered meaningless by said reduction" of underinsured motorist coverage limits by the liability insurance coverage limits. *Id.*

■■■■■■ In the present case the Youlers' automobile insurance policies provide that automobile liability insurance coverage of a tortfeasor is to reduce "[a]ny amounts otherwise payable for *damages* under this [uninsured/underinsured motorist coverage] endorsement[.]" (emphasis added)

This policy language clearly requires the tortfeasor's liability insurance coverage to be set off against damages, not against the underinsured motorist coverage limits.[14]

State Auto points to the fact that *W. Va. Code,* 33–6–31(b) was amended in 1988, after the operative facts in this case, to very explicitly preclude "setoffs" of liability insurance coverage against underinsured motorist coverage limits. The language added, in two places, is as follows. First, at the end of the statutory language, "all sums ... as damages ... up to an amount not less than limits of ... liability insurance purchased by the insured," these words were added: "without setoff against the insured's policy or any other policy." Second, at the end of the definition of "underinsured motor vehicle" in this same statute, these words were added: "No sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy." State Auto argues that these additions in 1988 indicate a change in the law, so that prior thereto, and therefore in this case, the statute allowed a setoff of the tortfeasor's liability insurance coverage against the injured person's underinsured motorist coverage limits. We disagree. In light of the clear "all sums ... as damages" language in the statute prior to 1988, this Court believes that the 1988 additions in this regard to the statute constitute only a clarification of the legislature's original intent to preclude the type of setoff proposed by State Auto here. *See Mid–Century Insurance Co. v. Daniel,* 101 Nev. 433, 436–37, 705 P.2d 156, 158–59 (1985) (plain language of original enactment, applicable at time of case, was to embrace excess-type underinsured motorist coverage, requiring setoff to be against damages; more explicit language in subsequent amendment to statute was merely a clarification of legislature's origi-

---

14. Any "setoff" language in an automobile insurance policy which purportedly reduces the underinsured motorist coverage limits by the tortfeasor's automobile liability insurance coverage would be void as repugnant to the public policy of full indemnification set forth in *W. Va.*

*Code,* 33–6–31(b), as amended. *See* syl. pt. 1, *Deel v. Sweeney,* 181 W.Va. 460, 383 S.E.2d 92 (1989) (insurance policy provisions must be consistent with uninsured/underinsured motorist statute).

**570**

nal intent, not an indicator of a change in the law).

The goal of providing full indemnification to individuals injured by the negligent operation of motor vehicles by inadequately insured motorists "would be well served by employing setoffs so [that] they apply to avoid the duplication of benefits, rather than the reduction of liability for the insurer[,] when the tortfeasor's liability insurance is not adequate to provide full indemnification." 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 41.7, at 101 (2d ed. 1990). This Court holds that *W. Va. Code*, 33–6–31(b), as amended, on uninsured and underinsured motorist coverage, contemplates recovery, up to coverage limits, from one's own insurer, of full compensation for damages not compensated by a negligent tortfeasor who at the time of the accident was an owner or operator of an uninsured or underinsured motor vehicle. Accordingly, the amount of such tortfeasor's motor vehicle liability insurance coverage actually available to the injured person in question is to be deducted from the total amount of damages sustained by the injured person, and the insurer providing underinsured motorist coverage is liable for the remainder of the damages, but not to exceed the coverage limits.

Therefore, the answer to certified question number 8, *see supra* note 9, is no. The reduction is from damages, not from the underinsured motorist coverage limits.[15]

### V.

Having answered the certified questions, we dismiss this case from the docket of this Court and remand the case to the Circuit Court of Berkeley County for further proceedings consistent with this opinion.

---

15. Certified question number 9 reads as follows:
    9. In a case involving underinsured motorist coverage, is a settlement with a liability carrier[,] which is inadequate to compensate a tort victim[,] subject to the rules governing Mary Carter agreements with regard to disclosure of the settlement to opposing counsel and the jury?

Certified questions answered; case remanded.

Answer by the Circuit Court: Yes as to opposing counsel; discretion of court as to jury.
We decline to decide this question because the record presented to us does not contain sufficient information for us to address the same.