427 S.E.2d 461

Jack ARBOGAST, Sr., and Mary Elizabeth Arbogast, his wife, and Jack Arbogast, Jr., Plaintiffs Below, Appellees,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant Below, Appellant.

No. 21022.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 12, 1993.

Decided Feb. 11, 1993.

David B. Cross, David F. Cross, Wellsburg, for appellees.

Landers P. Bonenberger, R. Gregory McDermott, McDermott, Bonenberger, McDermott & Gallaway, Wheeling, for appellant.

PER CURIAM:

This case involves an appeal by Nationwide Mutual Insurance Company from the May 23, 1991, final order of the Circuit Court of Brooke County. That order granted summary judgment against the appellant, Nationwide, and ruled that the appellees, the Arbogasts, could stack three intra-policy underinsured motorist coverage within a single automobile insurance policy. The circuit court ordered that the wife and son of Jack Arbogast, Sr., could present claims for bystander recovery for negligent infliction of emotional distress.

On November 14, 1989, Elizabeth Parks lost control of her vehicle and ran into the parking lot of a service station operated by the appellee, Jack Arbogast, Jr. The automobile struck his father, Jack Arbogast, Sr., as he stood near the service station building, knocking him backwards through a plate glass window and pinning him to the ground. As a result of the accident, Mr. Arbogast, Sr., underwent the surgical amputation of his right foot and a portion of his right leg. When the accident occurred, his wife, Mary Elizabeth Arbogast, and his son, Jack Arbogast, Jr., were standing nearby and watched the vehicle strike him. Mrs. Arbogast was taken to the hospital, where she was treated for shock and released.

In October, 1990, Mr. Arbogast, Sr., his wife, and Jack Arbogast, Jr., an unmarried adult son who lived with his parents at the time of the accident, filed this lawsuit. In the complaint, Mrs. Arbogast alleged that she sustained physical injury upon observing the accident and stated that she went into shock at the accident scene and was transported by ambulance to a local hospital, where she was checked and released. There is no allegation in the complaint that Mr. Arbogast, Jr., sustained any type of physical injury, but he does argue that he suffered emotional injury as a result of witnessing the accident.

Subsequently, the appellees amended their complaint to include a declaratory judgment claim against Nationwide. At the time of the accident, the appellee, Jack Arbogast, Sr., was insured under an auto-

mobile insurance policy issued by Nationwide which covered three vehicles. The policy included underinsured motorist coverage on each vehicle, with limits of $100,000 per person and $300,000 per occurrence. The appellees argue that the underinsured motorist policies for those three vehicles should be stacked, which would afford the appellees total underinsured motorist coverage of $300,000 per person and $900,000 per occurrence.

Nationwide contends that the underinsured motorist coverage was limited to $100,000 per person and $300,000 per occurrence, based upon the "Limits of Liability" section:

> Limits apply as stated in the Declarations. The insuring of more than one person or vehicle under this policy does not increase our Underinsured Motorists payment limits. In no event will any insured be entitled to more than the highest limits applicable to any one motor vehicle under this policy or any other policy issued by us.

Nationwide also argues that the three underinsured motorist coverages could not be stacked because the premiums on the second and third Arbogast vehicles were discounted under a multi-car policy discount.

On May 23, 1991, the Circuit Court of Brooke County granted the appellees' motion for summary judgment and ruled that the appellees could stack the underinsured motorist coverage of the three automobiles insured by the Nationwide policy. The court also ordered that "Jack Arbogast, Jr. and Mary Elizabeth Arbogast were entitled to proceed on bystander recovery claims for the negligent infliction of emotional distress upon them as a result of the alleged actions of the defendant, Elizabeth Parks." This action is Nationwide's appeal from that final order.

■ In *State Auto Mutual Insurance Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990), this Court permitted stacking of underinsured motorist coverage:

> So-called "antistacking" language in automobile insurance policies is void under W.Va.Code § 33–6–31(b), as amended, to the extent that such language is purportedly applicable to uninsured or underinsured motorist coverage, and an insured covered simultaneously by two or more uninsured or underinsured motorist policy endorsements may recover under all of such endorsements up to the aggregated or stacked limits of the same, or up to the amount of the judgment obtained against the uninsured or underinsured motorist, whichever is less, as a result of one accident or injury.

*Id.* at syl. pt. 3.

More recently, in *Russell v. State Automobile Mutual Insurance Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992), this Court discussed stacking and multi-car coverage. In *Russell*, Tina Russell was a passenger in a vehicle owned by William and Judy Holt, driven by Laura Holt. Tina Russell was the granddaughter of Mary L. Russell. Tina Russell and Laura Holt died from injuries sustained in a collision with another vehicle. At the time, Tina Russell and Mary L. Russell, her grandmother, were the named insureds under an automobile insurance policy issued by State Automobile Insurance Companies. The policy provided underinsured motorist coverage of $20,000 per person and $40,000 per occurrence. The premium for the *Russell* policy, as in the Arbogasts' coverage, reflected a multi-car discount. The declaration page listed two separate vehicles for the Russells, with a discount for the second premium for the underinsured and uninsured motorist coverage.

■ Like *Youler*, the *Russell* State Auto policy involved antistacking language that limited the policy's underinsured motorist coverage to the highest limit applicable for any one vehicle covered by the policy. However, in *Russell*, the Court ruled that the underinsured motorist coverage in the State Auto policy could not be stacked when multi-car discounts were given:

> West Virginia Code § 33–6–31 does not forbid the inclusion and application of an anti-stacking provision in an automobile insurance policy where a single insurance policy is issued by a single insurer and contains an underinsured endorsement

even though the policy covers two or more vehicles. Under the terms of such a policy, the insured is not entitled to stack the coverages of the multiple vehicles and may only recover up to the policy limits set forth in the single policy endorsement.

*Id.* at syl. pt. 5. "[B]ecause of the multi-car discount given, it is obvious that the insured appellee bargained for only one policy and only one underinsurance motorist coverage endorsement.... The insured was therefore receiving the benefit of that which he bargained for and should not receive more." *Id.* 422 S.E.2d at 807.

■ Thus, because the *Russell* policy owner had received a multi-car discount, the Court concluded that the insured had received the benefit of the bargain and was not entitled to anything additional in the way of stacking. Similarly, a multi-car discount was received by the Arbogasts. Thus, under the theory set forth in *Russell*, the Arbogasts cannot stack the underinsured policies on their three vehicles.

Of course, the appellees contend that *Russell* does not apply in this case. Based upon *National Mutual Insurance Co. v. McMahon & Sons*, 177 W.Va. 734, 356 S.E.2d 488 (1987), they argue that since insurance policies are contracts of adhesion, and since the appellees had not read the policy because of its complexity, then the multi-car discount should not invalidate their right to stack. Essentially, the appellees argue that to permit an insurer to avoid recovery of "substantial payments under insurance policies without notice to the insured of the option for higher coverage for a minimal increase in premium with regard to underinsured motorist coverage violates the recognized public policy of full indemnification underlying uninsured and underinsured motorist coverage." We disagree. There is no merit in the appellees' argument that the insurance policy is too complex for the average person to understand that they are forfeiting thousands of dollars in stacking coverage by receiving a discount on their premiums. If so, it would likewise be true that because of the "complex nature" of the policy, the average

person could not have any expectation that they are entitled to thousands of dollars in stacking coverage by simply paying to insure multiple automobiles. Consequently, the Circuit Court of Brooke County erred in ruling that the appellees could stack the coverage on the three automobiles insured by the underinsured motorists policy.

The second issue concerns bystander recovery for the negligent infliction of emotional distress. The right to recover pecuniary damages for the infliction of emotional distress was initially addressed in *Monteleone v. Co–Operative Transit Co.*, 128 W.Va. 340, 36 S.E.2d 475 (1945). In *Monteleone*, three categories of recovery were recognized:

First, those mental disturbances that accompany or follow an actual physical injury caused by impact upon the occurrence of the tort; second, where there is no impact and no physical injury at the time, but a physical injury afterwards results as the causal effect of a nervous shock which in turn was the proximate cause of the defendant's wrong; and third, where there was no impact and no physical injury caused by the defendant's wrong, but an emotional or mental disturbance is shown to have been the result of the defendant's intentional or wanton wrongful act. In any of the foregoing classifications we believe that the plain weight of authority sustains a recovery.

*Id.* 36 S.E.2d at 478.

*Monteleone* also found that the theory of emotional distress was "too refined and too vague in [its] nature to be the subject of pecuniary compensation in damages," except where inseparably entwined with physical pain so as to be considered part and parcel of the physical pain and personal injury. 36 S.E.2d at 480 (citations omitted). However, in *Heldreth v. Marrs*, 188 W.Va. 481, 425 S.E.2d 157 (1992), we overruled *Monteleone* to the extent that it was inconsistent with *Heldreth*'s ruling that a defendant could be held liable for the negligent infliction of emotional distress for bystanders without a finding of physical inju-

ry, if certain requirements were satisfied. *Id.* at syl. pt. 1.

 In *Heldreth,* this Court set out the elements necessary to recover:

> A plaintiff's right to recover for the negligent infliction of emotional distress, after witnessing a person closely related to the plaintiff suffer critical injury or death as a result of defendant's negligent conduct, is premised upon the traditional negligence test of foreseeability. A plaintiff is required to prove under this test that his or her serious emotional distress was reasonably foreseeable, that the defendant's negligent conduct caused the victim to suffer critical injury or death, and that the plaintiff suffered serious emotional distress as a direct result of witnessing the victim's critical injury or death. In determining whether the serious emotional injury suffered by a plaintiff in a negligent infliction of emotional distress action was reasonably foreseeable to the defendant, the following factors must be evaluated: (1) whether the plaintiff was closely related to the injury victim; (2) whether the plaintiff was located at the scene of the accident and is aware that it is causing injury to the victim; (3) whether the victim is critically injured or killed; and (4) whether the plaintiff suffers *serious* emotional distress.

*Id.* at syl. pt. 2.

 Consequently, although we reverse the circuit court on the issue of stacking, we agree that an action by the appellees for bystander recovery for emotional distress might be maintained, depending on the facts. Our record is insufficient to determine if the Arbogasts have satisfied the *Heldreth* requirements and thus, we remand this portion of the appeal for the further development of facts on this issue.

Accordingly, we reverse the May 23, 1991, order of the Circuit Court of Brooke County insofar as it permitted stacking, affirm that portion which permits the Arbogasts to present claims for bystander recovery, and remand the case to the Circuit Court of Brooke County for development of

the facts on the issue of bystander recovery.

Reversed in part, affirmed in part, and remanded.