37 F.3d 1492
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 ALLSTATE INSURANCE COMPANY, An Illinois Corporation,
Plaintiff-Appellee,
v.
Judy Ellen ASHLEY; Tom Ashley, her husband, Defendants-Appellants.
 No. 94-1078.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 26, 1994.
Decided Oct. 24, 1994.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Charles H. Haden II, Chief District Judge. (CA-93-81-2)
 Thomas Leon Stanley, John R. Mitchell, L.C., Charleston, W.Va., for appellants.
 Benjamin Lee Bailey, Bowles, Rice, McDavid, Graff & Love, Charleston, W.Va., for appellee.
 On Brief Stuart A. McMillan, Bowles, Rice, McDavid, Graff & Love, Charleston, W.Va., for appellee.
 S.D.W.Va.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and MICHAEL and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 In this diversity action, the district court granted summary judgment in favor of Appellee Allstate Insurance Company ("Allstate"). We affirm.
 
 
 2
 * This case concerns an automobile insurance policy issued by Allstate to Appellants Judy and Tom Ashley. During the relevant time frame, the Ashleys owned five vehicles, all of which were insured by Allstate. Four vehicles were listed on one declaration sheet, while the fifth was listed on another sheet under a separate policy number. The policy provided for maximum underinsured driver coverage of $100,000 per person up to a total limit of $300,000 per accident.
 
 
 3
 The Ashleys' policy reflected a multi-car discount. They paid a premium of $5.20 for underinsured motorist coverage on the first vehicle, but paid only $4.30 for each of the additional four vehicles.
 
 
 4
 In December 1989 Mrs. Ashley and Anthony Payne were involved in an automobile accident near the town of Hurricane, West Virginia. Mrs. Ashley suffered serious injuries as a result of the crash. For purposes of this appeal, we assume that Payne was at fault. Payne's automobile insurance provided $50,000 in liability coverage. Mrs. Ashley's damages exceeded this sum, making Payne an underinsured driver under the Ashleys' Allstate policy.
 
 
 5
 The Ashleys claimed entitlement to $500,000 from Allstate through their underinsured driver coverage. They asserted that their underinsured coverage should be "stacked," or combined, so that they would receive the policy maximum of $100,000 for each of their five vehicles. Allstate filed this declaratory judgment action seeking a ruling that the policy precludes stacking and that Allstate's liability to the Ashleys is limited to $100,000.
 
 
 6
 The district court granted Allstate's motion for summary judgment. On appeal, we review the grant of summary judgment de novo, viewing any reasonable inferences in the light most favorable to the nonmoving party. Roe v. Doe, 28 F.3d 404, 406-07 (4th Cir.1994).
 
 II
 
 7
 In this diversity action, we apply the law of West Virginia. Erie R.R. v. Tompkins, 304 U.S. 64 (1938). The West Virginia Supreme Court of Appeals has addressed stacking of underinsured motorist coverage in several recent decisions. In State Auto. Mut. Ins. Co. v. Youler, 183 W. Va. 556, 396 S.E.2d 737 (1990), the court held that anti-stacking provisions in an underinsured motorist policy are unenforceable on grounds of public policy if an insured has obtained more than one policy from the insurer. The court noted that under these circumstances, anti-stacking language "thwarts the statutorily stated public policy of full indemnification." Id. at 564-65, 396 S.E.2d at 746.
 
 
 8
 Subsequently, in Russell v. State Auto. Mut. Ins. Co., 188 W. Va. 81, 422 S.E.2d 803 (1992), the West Virginia court held that anti-stacking provisions may be enforced when the insured has obtained one policy covering multiple vehicles. Id. at 84-85, 422 S.E.2d at 806-07. The insured in Russell had received a multi-car discount on her underinsured driver coverage. The court emphasized the significance of this fact, observing that it reflected a bargain "for only one policy and only one underinsurance motorist coverage endorsement." Id. at 85, 422 S.E.2d at 807. The court suggested that it might have reached the opposite result if the insured had not received the discount. Id.; see also Arbogast v. Nationwide Mut. Ins. Co., 189 W. Va. 27, 427 S.E.2d 461 (1993).
 
 
 9
 At present, therefore, it is settled West Virginia law that a provision prohibiting stacking of underinsured motorist coverage may be enforced when the insured has purchased only one automobile insurance policy, even though multiple vehicles are covered under that policy, if the policy reflects a multi-car discount.
 
 III
 
 10
 The Ashleys argue that Russell and Arbogast do not apply here because the anti-stacking language in Allstate's policy is ambiguous and because they received two separate polices from Allstate. We address each contention in turn.
 
 
 11
 * The Ashleys first contend that the anti-stacking language in their Allstate policy is ambiguous. In Russell, the court noted that other jurisdictions have allowed intra-policy stacking when purported antistacking provisions are ambiguous. 188 W. Va. at 82 n. 2; 422 S.E.2d at 804 n. 2. Cf. Arbogast, 189 W. Va. at 31, 427 S.E.2d at 465 (emphasizing role of multi-car discount in determining whether stacking is permitted). Because we conclude that the language at issue here is not ambiguous, we need not attempt to predict whether the West Virginia courts would allow stacking under this theory.
 
 
 12
 Under West Virginia law, "language in an insurance policy 'should be given its plain, ordinary meaning.' " Russell, 188 W. Va. at 83, 422 S.E.2d at 805 (quoting Soliva v. Shand, Morahan & Co., 176 W. Va. 430, 432, 345 S.E.2d 33, 35 (1986)). "[W]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Keffer v. Prudential Ins. Co., 153 W. Va. 813, 815-16, 172 S.E.2d 714, 715 (1970); see also Russell, 188 W. Va. at 83, 422 S.E.2d at 805. In Surbaugh v. Stonewall Cas. Co., the Supreme Court of Appeals reiterated the test for assessing a claim of ambiguity in an insurance case:
 
 
 13
 Whenever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous.
 
 
 14
 168 W. Va. 208, 210, 283 S.E.2d 859, 860 (quoting Prete v. Merchants Property Ins. Co., 159 W. Va. 508, 508, 223 S.E.2d 441, 442 (1976)).
 
 
 15
 The Allstate policy in effect at the time of Mrs. Ashley's accident contained a separate amendatory endorsement regarding uninsured and underinsured motorists insurance coverage. The endorsement included the following conditions:
 
 
 16
 5. Limits of Liability. (a) The limit of bodily injury stated in the declarations as applicable to "each person" is the limit of Allstate's liability for all damages ... because of bodily injury sustained by one person as the result of any one accident....
 
 
 17
 6. Non-Duplication of Benefits. There will be no duplication of payments for the same elements of loss if more than one ... Underinsured Motorists Insurance coverage applies to the loss.... This provision applies regardless of the number of motor vehicles insured under this or any other automobile insurance policy.
 
 
 18
 We do not believe these provisions are ambiguous.* When read in conjunction with the declaration sheets, Sec. 5 provides that, under the underinsured motorist endorsement, the maximum amount recoverable for injuries suffered by one person in one accident is $100,000. Section 6 amplifies this provision by stating that regardless of the number of vehicles insured under the policy, there can be no duplication of payments for the same loss under the underinsured endorsement, even if multiple underinsured coverage is found to apply. We do not discern in Sec. 6 the slightest indication that stacking is permissible in the circumstances of this case. The thrust of the provision is clearly to the contrary.
 
 
 19
 The Ashleys seek to wring a different meaning out of Sec. 6 by parsing the phrases "elements of loss" and "Underinsured Motorists Insurance coverage." They posit that Sec. 6 may be read to mean "The insured will not receive multiple compensation for her injuries and losses if stacking occurs." Under this interpretation, however, Sec. 6 would be virtually meaningless since in no event is an insured legally entitled to recover compensation exceeding her damages. Cf. W. Va.Code Sec. 33-6-31(b) (1992) (underinsured coverage must allow insured to receive sum "which he shall legally be entitled to recover as damages"). Moreover, the Ashleys' proffered interpretation does not even attempt to account for the language of Sec. 5. We therefore conclude that it is unreasonable.
 
 B
 
 20
 The Ashleys also claim they purchased two separate insurance policies from Allstate. Pointing out that they received two separate declaration sheets with different policy numbers, the Ashleys contend that Allstate's anti-stacking language is unenforceable under Youler. This argument is contrary to the undisputed facts.
 
 
 21
 Allstate submitted an unchallenged affidavit from Kenneth Whitt, a marketing underwriter at Allstate. Whitt testified that Allstate's computer system cannot handle more than four vehicles on a single declaration sheet. Any additional vehicles are listed on a second "rollover" declaration sheet, which is automatically assigned a different policy number. There is but one policy, however, as evidenced by the facts that (i) the Ashleys continued to receive a multi-car discount for the single vehicle listed on the roll-over declaration sheet and (ii) the two declaration sheets reflect identical effective dates and coverage. We conclude that Russell, not Youler, is controlling in this case.
 
 C
 
 22
 Finally, the Ashleys seek to generate a material factual dispute by citing Mr. Ashley's affidavit, in which he testified that an Allstate agent told him that the policy at issue here permitted stacking. West Virginia law, however, allows the use of parol evidence in construing a written contract only when the document is ambiguous. Bittorf v. Bittorf, 182 W. Va. 594, 596, 390 S.E.2d 793, 795 (1989). Here, as outlined above, there is no ambiguity. The Ashleys' attempt to invoke the doctrine of reasonable expectation fails for the same reason. See Russell, 188 W. Va. at 83 n. 3, 422 S.E.2d at 805 n. 3 (doctrine may be applied only when policy language is ambiguous).
 
 IV
 
 23
 For the reasons stated, the judgment of the district court is
 
 
 24
 AFFIRMED.
 
 
 
 *
 In 1992 Allstate replaced the language at issue here with an antistacking provision that mirrored the language upheld in Russell