IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 24-362

_____

FILED

May 21, 2026

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

DANNY J. DOBBINS and JACKIE L. DOBBINS,
Petitioners/Plaintiffs Below,

v.

WEST VIRGINIA NATIONAL AUTO INSURANCE COMPANY,
Respondent/Defendant Below.

_____

Appeal from the Intermediate Court of Appeals
No. 23-ICA-101
(Circuit Court of Logan County No. 20-C-98)

REVERSED AND REMANDED

_____

Submitted: April 22, 2026
Filed: May 21, 2026

Matthew M. Hatfield, Esq.
Madison, West Virginia
Counsel for Petitioners

Trevor K. Taylor, Esq.
Taylor Law Office
Morgantown, West Virginia
Counsel for Respondent

JUSTICE TRUMP delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "On appeal of a decision from the Intermediate Court of Appeals of West Virginia, the Supreme Court of Appeals of West Virginia applies a de novo standard of appellate review to a circuit court's entry of summary judgment." Syllabus Point 1, *Moorhead v. West Virginia Army National Guard*, 251 W. Va. 600, 915 S.E.2d 378 (2025).

2.      "Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syllabus Point 1, *Tennant v. Smallwood,* 211 W. Va. 703, 568 S.E.2d 10 (2002).

3.      "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Insurance Company of America,* 153 W. Va. 813, 172 S.E.2d 714 (1970).

**TRUMP, Justice**:

After Petitioner Danny J. Dobbins' pick-up truck was hit by another vehicle that fled the scene, Mr. Dobbins and Petitioner Jackie L. Dobbins, his wife, made a claim for uninsured motorist (UM) coverage under Mrs. Dobbins' automobile insurance policy. The insurance company, Respondent West Virginia National Automobile Insurance Company, denied coverage because petitioners had failed to report the accident to a police, peace, or judicial officer within twenty-four hours. The insurance policy, however, clearly and unambiguously provides that the failure to timely report the accident operates as a bar to coverage only if the failure to report is prejudicial to West Virginia National. For this reason, the Circuit Court of Logan County did not err in requiring West Virginia National to prove that its investigative interests were prejudiced by petitioners' failure to strictly adhere to the twenty-four-hour reporting requirement and in finding that West Virginia National failed to prove any such prejudice. Therefore, we reverse the decision of the Intermediate Court of Appeals (ICA) finding that the circuit court erred in conducting a prejudice analysis, and we remand this case for further proceedings.[1]

## I.      Facts and Procedural History

On December 20, 2018, West Virginia National issued a Personal Automobile Insurance Policy (Policy No. 1186521) to Mrs. Dobbins, under which policy her husband, Mr. Dobbins, was a rated driver, and their 2001 Dodge Dakota pick-up truck

---

[1] *See West Va. Nat'l Auto Ins. Co. v. Dobbins*, 249 W. Va. 681, 900 S.E.2d 730 (W. Va. Ct. App. 2023).

1

was an insured vehicle. The subject policy provided UM coverage for bodily injury in the amount of $25,000/$50,000 and UM property damage coverage in the amount of $25,000 (less a $300 deductible).

On the afternoon of Friday, February 15, 2019, at approximately 3:30 p.m., Mr. Dobbins was operating the pick-up truck at or near Loraine Street in Logan, West Virginia, when the truck was struck on the rear passenger side by another vehicle, a black Toyota truck. Petitioners allege that the collision was caused by the driver of the Toyota truck's failure to maintain control of that vehicle and that the driver—who was (and remains) unknown—fled the scene.

As to an insured's claim for UM coverage where an unknown driver is involved, West Virginia Code § 33-6-31(e) provides, in part:

> (e) If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, the insured, or someone in his or her behalf, in order for the insured to recover under the uninsured motorist endorsement or provision, shall:
>
> (1) Within twenty-four hours after the insured discover, and being physically able to report the occurrence of such accident, the insured, or someone in his or her behalf, reports the accident to a police, peace or to a judicial officer, unless the accident has already been investigated by a police officer[.]

The subject policy provided, in pertinent part, as follows:

**PART E – DUTIES AFTER AN ACCIDENT OR LOSS**

We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the

2

names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:
1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
3. Submit, as often as we reasonably require:
   a. To physical exams by physicians we select. We will pay for these exams.
   b. To examination under oath and subscribe the same.
4. Authorize us to obtain:
   a. Medical reports; and
   b. Other pertinent records.
5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:
1. Within twenty-four hours after the insured discovers, and bring [sic] physically able to report the occurrence of such accident, the insured or someone in his or her behalf, reports the accident to a police, peace or to a judicial officer, unless the accident has already been investigated by a police officer.[2]
2. Promptly send us copies of the legal papers if a suit is brought.

(Footnote added).

---

[2] Originally, subsection C.1 provided as follows:

C. A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

West Virginia National subsequently amended subsection C.1 by endorsement to the version in effect at the time of petitioners' accident. According to West Virginia National, the purpose of the amendment was to track the language of West Virginia Code § 33-6-31(e)(1). *See infra.*

After the accident, Mr. Dobbins drove the vehicle home. Although Mrs. Dobbins later described Mr. Dobbins as being "upset" and "confused," and Mr. Dobbins complained of having injuries to his neck and back, neither he nor Mrs. Dobbins was physically unable to report the accident to a police, peace, or judicial officer within twenty-four hours.[3]

According to petitioners, they did not report the accident to police within twenty-four hours because it occurred toward the end of the business day on Friday, February 15, 2019, and the following Monday, February 18, was a legal holiday (President's Day).[4] Petitioners testified that several days after the accident, they went to Logan City Hall in an effort to personally report it to the Logan City Police Department. Mr. Dobbins testified that someone at City Hall advised them that they had waited too long to report the accident and, as a result, a police investigation would not be (and was not) conducted.

---

[3] *See Lusk v. Doe*, 175 W. Va. 775, 780-81, 338 S.E.2d 375, 381 (1985), *overruled on other grounds by Hamric v. Doe*, 201 W. Va. 615, 499 S.E.2d 619 (1997) ("By the clear language of this provision, the twenty-four hour notice period is tolled as to insureds 'physically unable to report the occurrence of such accident[,]' . . . . The provision reasonably requires that once a victim of a 'hit and run' is physically able to report the accident, that victim has twenty-four hours to make the report unless someone in his or her behalf acts within the same extended time period.").

[4] *See* W. Va. Code § 2-2-1(a)(3) (designating the third Monday of February, President's Day, as a legal holiday).

4

West Virginia National, however, promptly began its own investigation after petitioners reported the accident to West Virginia National's representative on February 19. By letter dated February 21, 2019, West Virginia National forwarded an "Insured Driver Statement" form for petitioners to provide certain information about the accident. Petitioners completed the form, advising West Virginia National, among other things, that a police report had not been made and providing the names of three witnesses to the accident. Petitioners returned the completed form to West Virginia National.

By letter dated April 2, 2019, petitioners' counsel provided notice to West Virginia National of petitioners' UM claims for bodily injury and property damage under the subject policy. In response, West Virginia National advised counsel that because petitioners failed to contact police within twenty-four hours of the accident, as required by the subject policy and West Virginia Code § 33-6-31(e)(1), their claim for UM bodily injury and property damage coverage was denied. Petitioners' counsel replied by letter to West Virginia National asking whether it disputed that a hit-and-run accident occurred and further, whether it was prejudiced by petitioners' delay in reporting the accident to police. By letter to petitioners' counsel dated June 12, 2019, West Virginia National, "[w]ithout waiving any aspect of its current coverage position," requested contact information for the witnesses whom petitioners had previously identified and advised that it would be scheduling an inspection of the damaged pick-up truck. Petitioner's counsel provided the requested information.

5

An inspection of the vehicle was conducted in late June/early July 2019. West Virginia National obtained the witnesses' recorded statements on June 28, July 31, and August 12, 2019, respectively.[5]

Ultimately, by letter dated September 3, 2019, West Virginia National denied petitioners' claim for UM coverage. The denial was based exclusively upon petitioners' failure to contact police within twenty-four hours of the accident. Petitioners thereafter filed a complaint against John Doe, the unknown driver of the other vehicle, alleging negligence causing bodily injury, property damage, and other damages (Count 1), and against West Virginia National, seeking a declaratory judgment that West Virginia National must provide petitioners UM coverage under the subject policy (Count 2), and further alleging claims of breach of contract (Count 3), breach of the implied covenant of good faith and fair dealing/bad faith (Count 4), and conduct constituting unfair claim settlement practices, a violation of West Virginia Code § 33-11-4(9) (Count 5).

West Virginia National filed an answer, and discovery ensued. Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, West Virginia National filed a motion for summary judgment, and petitioners filed a motion for partial summary judgment, both as to Count 2 of the complaint: the declaratory judgment count as to whether West Virginia National was required to provide petitioners UM coverage under the subject policy.

---

[5] The witnesses' statements are not a part of the appendix record. West Virginia National does not contend that the statements in any way contradict petitioners' claim that Mr. Dobbins' truck was hit by another vehicle that fled the scene.

Following a hearing, the circuit court granted partial summary judgment in favor of petitioners, finding that petitioners were entitled to UM coverage under the subject policy because West Virginia National failed to present evidence that it was prejudiced by petitioners' failure to report the accident to police within twenty-four hours. In so ruling, the circuit court relied on this Court's decision in *State Auto Mutual Insurance Co. v. Youler*, 183 W. Va. 556, 396 S.E.2d 737 (1990). *Youler* involved a claim for underinsured motorist (UIM) coverage under two automobile insurance policies that required a person seeking UIM coverage under the policies to notify the insurance company "'promptly of how, when and where the accident or loss happened'" and to "'[p]romptly send [the insurer] copies of the legal papers if a suit is brought.'" *Id.* at 559, 396 S.E.2d at 740. Based upon the insureds' three-year delay in notifying it of the accident, the insurance company sought a declaratory judgment that the insureds were not entitled to coverage because they failed to comply with the policies' provisions requiring prompt notice. *Id.* at 559-60, 396 S.E.2d at 740-41.

In considering the issue upon a certified question, we established in *Youler* that an insured's delay in providing notice of an accident to the insurance company does not automatically bar UM or UIM coverage under the insurance policy; rather, the insurance company may be required to produce evidence that its investigative interests were prejudiced by the delay:

> [i]n an uninsured or underinsured motorist case, prejudice to the investigative interests of the insurer is a factor to be considered, along with the reasons for delay and the length of delay, in determining the overall reasonableness in giving

7

notice of an accident. In the typical case, the insured must put on evidence showing the reason for the delay in giving notice. Once this prerequisite is satisfied, the insurer must then demonstrate that it was prejudiced by the insured's failure to give notice sooner. If the insurer fails to present evidence as to prejudice, then the insured's failure to give notice sooner will not be a bar to the insured's recovery. If the insurer puts on evidence of prejudice, however, the reasonableness of the notice ordinarily becomes a question of fact for the fact finder to decide.

183 W. Va. 556, 396 S.E.2d 737, syl. pt. 2.[6]

Relying on *Youler*, the circuit court concluded that petitioners provided

reasons for the delay in contacting the police about the accident—namely, that Mr. Dobbins

---

[6] In so holding in *Youler*, we noted our agreement with Professor Widiss that

"[c]ourts should exercise restraint in regard to requiring strict technical compliance with coverage provisions that require the notice of an accident or proof of claim requirements. An allocation of the burden of proof on this issue to the insurer seems warranted for several reasons, including (1) the insurer is in the best position to evaluate the consequences of not having received notice, (2) in general it is very difficult to show the negative effects of various events, in contrast with demonstrating what the actual consequences were, and (3) in cases in which there is a dearth of evidence as to the effect of the late notice the coverage is not lost. When it is not evident that an insurer was prejudiced, an insurer should be required to show why the delay adversely affected its position. In the absence of such proof, there should not be a forfeiture of the uninsured [or underinsured] motorist coverage."

*Id.* at 563, 396 S.E.2d at 744 (quoting 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 16.2, at 20 (2d ed. 1990)).

cannot read or write and Mrs. Dobbins has similar limitations[7] making it difficult for petitioners "to ascertain the reporting requirements" stated in the subject policy; that Mr. Dobbins was upset following the accident; and that the accident occurred "at the close of business on Friday . . . the beginning of [the] President's Day holiday weekend [and] Logan City Hall . . . would not be open for business until Tuesday, February 19, 2019 due to the said holiday."[8]

The circuit court determined that "[t]the burden [then] shift[ed] to West Virginia National to show it was prejudiced by [petitioners'] failure to provide notice sooner[,]" and that West Virginia National failed to carry its burden. The circuit court found that petitioners notified West Virginia National of the accident on February 19, 2019, four days after its occurrence. Although petitioners disclosed to West Virginia National the identity of witnesses to the accident, West Virginia National did not obtain their statements until June, July, and August, respectively; similarly, West Virginia National did not inspect the damaged vehicle until the end of June. The circuit court found that West Virginia National failed to provide any reason for waiting so long to either obtain witness statements

---

[7] Mr. Dobbins dropped out of school in the fifth grade and Mrs. Dobbins, in the eleventh grade.

[8] The circuit court remarked that West Virginia Code § 33-6-31(e)(1) requires

> only . . . that a person (such as the plaintiffs) seeking to recover under a UM provision of an insurance policy report the collision to the police within twenty-four (24) hours. [It] does not require that 911 be notified or that the police investigate the collision—nor can the plaintiffs force the police to investigate or prepare a report.

or inspect the vehicle. With regard to West Virginia National's assertion that petitioners' delay in reporting the accident to a police, peace, or judicial officer "significantly prejudiced West Virginia National's investigation of [petitioners'] claim such that it cannot [be] overcome" because "a BOLO could have been issued" and witness statements and physical evidence could have been collected "to determine the identity of the at-fault driver,"[9] the circuit court found "[t]his argument . . . suggests that [petitioners] were required to contact the police immediately following the collision. . . . W. Va. Code § 33-6-31(e) only requires the collision be reported within twenty-four (24) hours—which time frame would not enable the police to obtain statements on the day [of the accident] or issue a BOLO."

The circuit court granted petitioners' motion for partial summary judgment, concluding that West Virginia National failed to show that it was prejudiced by petitioners' failure to report the accident to a police, peace, or judicial officer within twenty-four

---

[9] In terms of presenting demonstrated evidence of prejudice, petitioners' Interrogatory No. 19 asked West Virginia National whether it "contends it was prejudiced in any way due to allegations that the collision was not reported to the police within twenty-four (24) hours and, if so, list every piece of evidence known to it supporting that contention[,]" including identifying witnesses, documents, or inferences therefrom. West Virginia National responded:

> Objection. The term 'prejudice' is vague, ambiguous, and unclear as used in this Interrogatory. Without waiving it[s] objection, WV National Auto responds by stating whether WV National was prejudiced by Plaintiffs' lack of action is not the applicable standard of law in this matter. The appropriate standard is that which is set forth in Section 33-6-31(e)(1) of the West Virginia Code and the terms provided in Mrs. Dobbins' insurance policy.

10

hours.[10] Accordingly, the circuit court ordered West Virginia National to provide UM coverage to petitioners under the subject policy.[11]

West Virginia National appealed the circuit court's partial summary judgment order to the ICA, which reversed, finding, inter alia, that the circuit court erred in conducting the prejudice analysis established in *Youler* instead of "strictly apply[ing]" the plain language of the subject policy and West Virginia Code § 33-6-31(e)(1). This appeal followed.

## II.    Standard of Review

This case presents an appeal from an ICA decision reversing the circuit court's partial summary judgment order. Our review of the circuit court's order is plenary. "On appeal of a decision from the Intermediate Court of Appeals of West Virginia, the Supreme Court of Appeals of West Virginia applies a de novo standard of appellate review to a circuit court's entry of summary judgment." Syl. Pt. 1, *Moorhead v. W. Va. Army Nat'l Guard*, 251 W. Va. 600, 915 S.E.2d 378 (2025). Further, "[d]etermination of the proper

---

[10] The circuit court also concluded that West Virginia National failed to provide any evidence to contradict petitioners' claim that Mr. Dobbins' vehicle was struck by a "hit-and-run driver" on February 15, 2019, or that petitioners otherwise presented a fraudulent UM claim. West Virginia National does not dispute these findings.

[11] As an alternative basis for granting petitioners' motion for partial summary judgment, the circuit court applied West Virginia Code § 2-2-1(e) to "toll" West Virginia Code § 33-6-31(e)(1)'s twenty-four-hour reporting requirement and found that petitioners timely reported the accident to police. Because our disposition of this appeal is based solely on the application of the plain language of the subject policy, we need not address this issue.

11

coverage of an insurance contract when the facts are not in dispute is a question of law."

Syl. Pt. 1, *Tennant v. Smallwood,* 211 W. Va. 703, 568 S.E.2d 10 (2002).

### III.    Discussion

Our focus in this appeal is whether, to lawfully deny petitioners' claim for UM coverage under the subject policy, West Virginia National was required to show that its investigative interests were prejudiced by petitioners' failure to report Mr. Dobbins' accident with an unknown driver to a police, peace, or judicial officer within twenty-four hours. We find that the policy itself is dispositive of the issue. The policy clearly and unambiguously required West Virgina National to prove such prejudice. Because there was no evidence presented that West Virginia National's investigative interests were prejudiced by petitioners' delay in reporting the accident to police, we hold that the circuit court did not err in granting partial summary judgment in favor of petitioners.[12]

Generally, "[t]he satisfaction of the notice provision in an insurance policy is a condition precedent to coverage for the policyholder." Syl. Pt. 1, *Travelers Indem. Co. v. U.S. Silica Co.,* 237 W. Va. 540, 788 S.E.2d 286 (2015). To recover UM benefits, it is

---

[12] Although the circuit court unnecessarily relied on *Youler* as the basis for conducting the prejudice analysis in this case, its analysis was correct nonetheless, and an order granting partial summary judgment was warranted. We have long held that "'[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.' Syllabus point 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965)." Syl. Pt. 2, *Adkins v. Gatson*, 218 W. Va. 332, 624 S.E.2d 769 (2005).

widely recognized that the purpose of requiring an insured to report an accident with an unknown driver to police within twenty-four hours as a condition precedent to coverage is to protect the insurance company from potentially fraudulent claims. *See Lathrop v. Safeco Ins. Co.*, 174 N.E.3d 981, 990 (Ill. App. Ct. 2020) (discussing policy provision requiring person seeking UM/UIM coverage to report accident to police "within twenty-four (24) hours or as soon as practicable if a hit and run driver is involved"). Such reporting (or notice) provisions, as conditions precedent to obtaining UM coverage, also

> allow the police and other interested parties (such as the insurance company) an opportunity to investigate, search and possibly apprehend the hit and run driver, thus facilitating inquiry whether the hit and run vehicle was in fact uninsured and allowing the insurer to enforce its subrogation rights against a negligent uninsured hit and run motorist.

*Allstate Ins. Co. v. Korschun*, 350 So. 2d 1081, 1081 (Fla. Dist. Ct. App. 1977).

In this case, the conditions precedent to UM coverage are set forth in the subject policy as follows:

> PART E – DUTIES AFTER AN ACCIDENT OR LOSS
>
> *We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:*
>
> . . . .
>
> C. A person seeking Uninsured Motorists Coverage must also:
>
> 1. Within twenty-four hours after the insured discovers, and bring [sic] physically able to report the occurrence of such accident, the insured or someone in his or her behalf, reports [sic] the accident to a police, peace or to a judicial officer, unless the accident has already been investigated by a police officer.

13

2. Promptly send us copies of the legal papers if a suit is brought

(Emphasis added).

We find these provisions to be clear and unambiguous. This Court has held that "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl., *Keffer v. Prudential Ins. Co. of America,* 153 W.Va. 813, 172 S.E.2d 714 (1970). *See* Syl. Pt. 1, *Soliva v. Shand, Morahan & Co., Inc.,* 176 W.Va. 430, 345 S.E.2d 33 (1986), *overruled on other grounds by National Mut. Ins. Co. v. McMahon & Sons, Inc.,* 177 W. Va. 734, 356 S.E.2d 488 (1987) ("Language in an insurance policy should be given its plain, ordinary meaning."). Applying this standard to the plain language of Part E, subsection C, absent a showing of prejudice to West Virginia National, a failure to comply with subsection C does not constitute a valid basis to deny UM coverage. Given this clear and unambiguous policy language, the circuit court's discussion and analysis of West Virginia Code § 33-6-31(e)(1) and our decision in *Youler* were unnecessary. Rather, under the policy itself, West Virginia National was required to prove it was prejudiced by petitioners' failure to report the accident to police within twenty-four hours.[13]

---

[13] *See* W. Va. Code § 33-6-31(k) ("Nothing contained herein prevents any insurer from also offering benefits and limits other than those prescribed herein, nor does this section prevent any insurer from incorporating in such terms, conditions and exclusions as may be consistent with the premium charged."); *see also* W. Va. Code § 33-6-10(b), in part ("No policy shall contain any provision inconsistent with or contradictory to any standard provision used or required to be used, *but the commissioner may approve any substitute*

14

In insurance coverage disputes, this Court has stated that its "most basic and preeminent concern . . . is that insurance consumers and insurance purveyors alike receive the benefit of their bargained for exchange when they meet to contract for motor vehicle insurance coverage." *Cunningham v. Hill*, 226 W. Va. 180, 185-86, 698 S.E.2d 944, 949-50 (2010) (citations omitted). Accordingly, we conclude that, under the clear and unambiguous language of the subject policy, West Virginia National was required to prove that its investigative interests were prejudiced by petitioners' failure to report the accident to a police, peace, or judicial officer within twenty-four hours, and that the circuit court did not err in finding West Virginia National failed to prove any such prejudice.

## IV.     Conclusion

For the reasons stated above, we reverse the decision of the ICA and remand this case to the Circuit Court of Logan County for further proceedings.

Reversed and Remanded.

---

*provision which is, in his opinion, not less favorable in any particular to the insured or beneficiary than the standard provisions or optional standard provisions, otherwise required.*" (Emphasis added)).

15